DAVID A. SMITH, Administrator, *et al.,* Appellants, *v.* MURRAY McCONNELL *et al.,* Appellees.

### APPEAL FROM SCOTT.

The holder of a legal title not in actual possession, cannot, as a general rule, maintain a bill to quiet his title, and compel a relinquishment of adverse claims. Equitable titles, which cannot be enforced at law, may stand differently.

Posthumous children take by descent with the antecedent children, or with other heirs.

The heir is owner of the lands of an intestate and the rents and profits derived therefrom, until divested by an order of sale or decree for the purpose of paying debts.

An administrator takes no estate, right, title or interest in realty. He takes only a power.

An administrator cannot in equity obtain relief by the removal of adverse apparent titles to the lands of his intestate, or convert an equitable into a legal title.

THE facts of this case, as they appear from the pleadings and proofs, are as follows:

In September, 1837, Jesse McKee conveyed for $450, to McConnell, Vansyckel and Ormsbee, a piece of ground in Naples,

covenanting that he was seized of an indefeasible estate in fee simple, that he had good right to sell, that it was unencumbered, and to warrant and defend the title. In July, 1839, Ormsbee conveyed his interest in the property to McConnell and Vansyckel.

In December, 1837, Jesse McKee for $5,000 conveyed with general warranty, certain Naples property to Delahay and died testate in December, 1838, appointing his brother, Wm. McKee, his executor with power to sell real estate to pay debts, and after payment of debts his property to be equally divided between his widow and nephew, the said Jerome McKee, deceased. Wm. McKee proved the will and qualified as executor.

In July, 1849, McConnell and Vansyckel filed a bill in chancery in the Circuit Court of Scott, alleging the foregoing facts; that Delahay made a mortgage to one Neice, including one of the items of property conveyed to Delahay as aforesaid, and that was estimated in the conveyance at $150. That the mortgage was assigned to McConnell and Vansyckel, and they foreclosed the same and became the purchasers of the same. That at the time Jesse McKee made the aforesaid deeds, he had no title to the items of property above referred to, " and the said McConnell and Vansyckel further aver that said land, at the time said McKee sold the same, belonged to Charles Collins, and to no other person; and in 1848 the said Charles Collins asserted his right thereto, and said land never having been in the possession of said McKee, but it being a vacant, unimproved tract of land, no actual eviction could occur against said complainants otherwise than in this, the said Collins exercising said right as owner of said land, sold and by deed conveyed the same to Murray McConnell, who is now the owner thereof, having received from the said Collins a conveyance therefor, has taken possession thereof, and thereby evicted said complainants." That covenants in Jesse McKee's deeds have been broken and they have a right to purchase money and interest out of his estate. That personal estate had been fully administered and that certain items of real estate that are in controversy in this case belonging to said estate, are in the hands and possession of Wm. McKee, as executor. That the widow had married one Sutphen, and they had quit-claimed their interest in the real estate to Jerome McKee, the other devisee, who had died leaving a widow, Isabella McKee, (no child,) his father, the said Wm. McKee, and his brother Samuel McKee, as his heirs at law— against whom the bill was exhibited as defendants. Answer on oath is waived, and the executor is called upon to make discovery as to title and estate of Jesse McKee, deceased. Prayer of bill for sale of the specific items of property in controversy

in this case, or for such other and further relief as complainants were entitled to. Copies of deeds above referred to (excepting deed of Collins to McConnell) are annexed to the bill, as also copy of will of Jesse McKee and probate thereof. *Subpœna ad respondendum* served upon the executor, who did not answer. Bill taken *pro confesso* v. him and co-defendants, as non-residents, at appearance term, September, 1849, and decree rendered for sale of property in controversy in this case; advertised and sold by the master in chancery of Scott county, 19th of November, 1849. All sold to McConnell except the sixth item in master's report, which was sold to John Abbot for $55. The sale produced twenty-one and one-half cents more than amount of decree, interest and costs. The master reported sales and conveyances to the next term of the court, and his report was approved by the court, and it was ordered by the court that purchasers have immediate possession of the estate sold, and rents and profits from day of sale.

In February, 1853, appellants exhibited their bill, v. appellees in the case, stating that Jerome McKee, Sen., died intestate in Ohio, in April, 1849. That at the time of his death, not by descent or devise, but as a purchaser for a valuable consideration, he was seized in fee of the items of real estate in controversy in this case. That McConnell and Vansyckel in July, 1849, on a groundless and unjust claim against the estate of said deceased, as claiming through the estate of Jesse McKee, deceased, filed a bill v. Wm. McKee, Isabella McKee, and Samuel McKee, as heirs at law of the said Jerome McKee, deceased, and at the next term of the court obtained a decree by default for sale of said real estate, and that it was sold as alleged in the master's report above referred to. "When in fact and in truth your complainant Jerome McKee, Jr., as a posthumous child of the said deceased, and said Isabella, born 15th November, 1849, at the time of obtaining said decree is, and was to be regarded as, the sole heir at law of said deceased, and as born in the life time of said deceased." That McConnell, bought the 7th item of said real estate for $10 and sold it to Lee for some $300, and that the appellees were in possession of said items of real estate. That David A. Smith was appointed administrator of said deceased in July, 1852, and in December, 1852, obtained order of sale of said real estate to pay debts of said deceased, and that there would probably be left a surplus of said estate after selling enough to pay debts. That it would not be safe or just to execute the order of sale while appellees were in adverse possession of the real estate, claiming title thereto, and if sold under such circumstances would produce little or nothing. That as far as appellees or any of them had claims against the estate

of Jesse McKee, deceased, they were barred by the statute of limitations and non-claim. Prayer of bill that any claim of the appellees, any or either of them, to sell real estate, be vacated for protection of sale under order and for ultimate benefit of Jerome McKee, junior, as to any surplus not sold, and that appellees give possession of lands when sold, and for general and alternative relief.

John Lee answers that he was purchaser for valuable consideration of McConnell of eighty acres of wild land, went into possession of it and improved it, and claims to be re-imbursed for his improvements if his title fails. Relies upon proceedings and decree at suit of McConnell and Vansyckel above referred to— as in full force and a bar to this suit. That Jerome McKee, senior, had no other title or claim to the land in controversy than as devisee of Jesse McKee, deceased. That in the suit of McConnell and Vansyckel to sell the lands, Wm. McKee as executor was the only necessary defendant, and that Jerome McKee, junior, as posthumous child of his father, is bound by the decree in that case—that no such person as the posthumous child was ever heard of until this suit was brought. That Wm. McKee as executor advised and encouraged the institution of the suit of McConnell and Vansyckel, and before it was commenced told the complainants that Jerome McKee had died without child. That Isabella McKee being entitled to dower in the lands, is a necessary party to the suit, and it ought to be dismissed because she is not party. That bill ought to be dismissed for multifariousness, as to parties and objects of the bill. Denies that Smith, as administrator, had authority to file bill to quiet title to the land, or has obtained any proper order to sell land— says that his letters of administration were obtained by fraud— that the whole of the proceedings are fraudulent and void—and makes exhibits of proceedings of County Court of Scott, granting administration to Smith, allowing claims against estate on notice —order of sale of real estate.

McConnell files plea in bar, setting out record and proceedings at suit of himself and Vansyckel above set forth, and saying that the same rights were settled in that case that are sought to be relitigated in this case.

Replication was filed to the foregoing answer and plea.

Vansyckel filed demurrer assigning six causes specially.

Stipulation was entered into as to certain facts, April term, 1855, cause to be heard in vacation, and was heard October term, 1855, on same stipulation and four deeds. 1st, Sutphen and wife quit-claim deed to Jerome McKee, 1st of January, 1848. 2nd, Deed of same date, to same, by Wm. McKee, executor, conveying same property described in first deed, in con-

sideration of Jerome McKee making his note at one day's date to Wm. McKee for $2,400, balance due executor from estate of Jesse McKee, deceased. 3rd, Quit-claim deed, July, 1848, Mc-Connell to Jerome McKee for one of the items of property in controversy. 4th, General warranty deed of same date, to same, McConnell and Vansyckel and wives for $150 for part of another of the items of property in controversy in this case.

Decree dismisses bill absolutely as to appellant Smith, and without prejudice as to appellant McKee.

Errors assigned by appellants severally:

1st, That court below dismissed bill.

2nd, That court below did not grant relief specifically asked in the bill.

3rd, That court below did not decree account of rents and profits allowing for improvements, if any.

D. A. SMITH, for Appellants.

M. McCONNELL, for Appellees.

SCATES, C. J. The decree should be affirmed. The court have, in *Alton Marine and Fire Insurance Co.* v. *Buckmaster et al.*, 13 Ill. R. 205, sanctioned the doctrine laid down in the *Trustees of Louisville* v. *Gray*, 1 Litt. R. 147; and *Harris* v. *Smith*, &c., 2 Dana R. 10, that "the holder of a legal title not in actual possession, cannot, as a general rule, maintain a bill to quiet his title, and to compel a relinquishment of adverse claims." *Niven* v. *Belknap*, 2 John. R. 573. "The reason why the party out of possession cannot maintain such a bill, is, that he may bring an action at law to test his title, which, ordinarily, a party in possession cannot do; such a bill is only entertained by a court of equity, because the party is not in a position to force the holder of, or one claiming to defend under, the adverse title, into a court of law to contest its validity; and this, as a general. rule, is the test to which a court of equity will look to determine whether the necessity of the case requires its interference." 13 Ill. R. 205. And the question in 2 Dana R. 10 was regarded as one of jurisdiction.

But the reason of the rule, as thus laid down, is applicable to legal titles in persons out of possession, and would not embrace mere equitable titles, which could not be asserted at law. Though bills may be brought, sometimes, before establishing complainant's rights at law, they are entertained with great caution, even on behalf of persons in possession, when there is no such disturbance of the right or possession as will enable the

party to maintain his action at law. 1 Litt. R. 147. See 1 Atk. R. 284; 2 Atk. R. 484; Prec. Ch. 531.

This case presents no such grounds. The heir is out of possession and the defendants in, and the courts of law are not only open, but competent to try his title, which is a legal one. Upon a recovery by him at law, under our statute for bringing ejectments, under which the real title may be put in issue and determined, no apparent ground of equitable jurisdiction or interference would remain, not even in the shape of a cloud, upon the title.

The question involved seems to be one of a simple, naked succession by descent, being cut off by a decree and sale in a proceeding in equity against those alone who would have been heirs of the same intestate, had not this posthumous child been born in due time, together with the executor of the testator, from whom the intestate took by devise.

Our Statute of Wills (Rev. Stat. '45, p. 547, Sec. 54) has expressly provided for such a case, and that they shall take "in all respects as though he, she or they *had been born* in the *lifetime* of the intestate." An analogous statute (10 and 11 Wm. 3, Cap. 16) was passed in England, providing that posthumous children should take estates limited in remainder, under *marriage or other settlements.*

In *Reeve* v. *Long*, 1 Atk. R. 227, the House of Lords, reversing the judgment of the Court of King's Bench, held that a posthumous child could take a contingent remainder limited under an executory devise in a will. This case was before the statute of William Third. And tradition gives us a reason for omitting such devises in the statute, that the Lords were unwilling to throw thereby a doubt upon the correctness of their own decision, with which the judges were much dissatisfied, and blamed the judge who tried the cause for suffering a special verdict to be found. Id. Butler's note to Coke Litt. p. 298.

It is said there is no ground for a distinction under the statute between executory devises and marriage and other settlements. Buller Nis. Pri. p. 105; and in *Roe* v. *Quartly*, 1 Term R. 634, it seems to have been taken for granted that executory devises were within the statute. This case, among others, was cited and approved in *Thellusson* v. *Woodford*, 11 Ves. Jr. R. 140, and the court sustained an executory devise dependent upon nine lives in being, and the survivor of them. And although it was the manifest intention of the testator to prevent the alienation of the property as long as he could, and provide for an accumulation of rents and profits during the same period, yet, as much as the law abhors perpetuities—and judges set their faces against

them—it was held that the period of gestation might be counted as a life, in being both at the beginning and the end of the nine lives; thus doubling the period of gestation, and treating each child *en ventre sa mere*, at the beginning and at the end of the lives, upon which the executory limitation depended for vesting, as a life in being, sufficient to sustain it.    Many decisions are reviewed in it, and all of which fully sustain the position that such a posthumous child is not only capable of taking himself, but is such a life in being as will support a contingent remainder under an executory devise by will, and a contingent remainder limited by marriage or other settlements.    See *Love* v. *Wynham*, 1 Mod. R. 50; *Scatterwood* v. *Edge*, 1 Salk. R. 229; *Humberton* v. *Humberton*, 1 P. Wms. R. 332; *Sheffield* v. *Lord Orrery*, 3 Atk. R. 282; *Gurnall* v. *Wood*, Willes R. 211; *Robinson* v. *Hardcastle*, 2 Bro. C. C. 30; *Loddington* v. *Kime*, 1 Ld. Raym. R. 207; *Northey* v. *Strange*, 1 P. Wms. R. 340; *Burdet* v. *Hopegood*, id. 486; *Beale* v. *Beale*, id. 244; *Wallace* v. *Hodgson*, 2 Atk. R. 117; *Basset* v. *Basset*, 3 Atk. R. 203; *Gulliver* v. *Wicket*, 3 Wils. R. 105; *Doe* v. *Lancashire*, 5 Term R. 49; *Doe* v. *Clarke*, 2 H. Black R. 399; *Long* v. *Blackall*, 3 Term R. 486; 7 Term R. 100; *Harrison* v. *Harrison*, stated from register book, 4 Ves. Jr. R. 338.

It is said in 11 Ves. Jr. R. 140, by Baron Macdonald, *arguendo*, that the rule is otherwise in case of descent, and which is strongly implied by our statute as amendatory of the common law; yet, whether we could or not derive the rule from the common law, which held it criminal to destroy such a life, we have it expressly given by statute, and the minor plaintiff falls clearly within it.    The same rule was sustained as to devises in New York, without a statute.    *Stedfast* v. *Nicoll*, 3 John. Cas. 18. The American law is so summed up by Mr. Hilliard, both by descent and limitations.    1 Hilliard on Real Prop., Cap. 45, p. 521.    See 4 Kent Com. 248.

It has been held repeatedly by this court that the lands of one dying intestate descend to the heir; and although it is subject to the payment of debts, and may afterwards be divested by decree and sale of the administrator, the heir is nevertheless owner, and entitled to the rents and profits in the meantime.    The administrator, therefore, takes neither an estate, title or interest in the reality; not even so much as to make judgments for debts against the estate absolutely binding by privity, as against the heir and the land on an application to sell to pay the debts. *Stone et al.* v. *Wood, adm'r*, 16 Ill. R. 177.    The administrator, therefore, takes a power, and not an interest.    No argument supported by analogy to settled principles, and no authority or decision was shown, which would enable an administrator to sup-

port any possessory or real action, in law or equity, for the recovery or maintenance of possession or title ; or to clear up and vindicate title from clouds from adverse claims.

A very forcible argument was offered to show how beneficial it might be to so change the law as to allow administrators to do so, for the purpose of preventing sacrifices by selling under such circumstances of suspicion upon the title, since they have power to dispose of the whole fee. The object is a worthy and meritorious one, well calculated to promote the interests of both creditors and heirs. And had the heir filed his bill to enjoin a sale by the administrator at a sacrifice, until he could remove such depreciating influences with a *bona fide* offer, with convenient speed to do so, a much stronger ground for equitable interposition would have been presented. The law does not afford redress, literally, as broad as its theory and maxims. Every possible damnification is not a legal injury. So it was held in *Burnap* v. *Dennis*, 3 Scam. R. 478, that where a public sale of personalty by an administrator was prevented by threats to prosecute and litigate with any person who should purchase, no action was maintainable. The doctrine of slander of title does not embrace personalty, and administrators cannot maintain such action in respect of the realty. I am of opinion that an administrator's rights and powers in this respect are no broader than his duties; and they are limited to the sale of the title and estate of the intestate and the due administration of the proceeds.

*Decree affirmed.*

SKINNER, J. I do not assent to the doctrine that an administrator whose duty it may be, for want of personal estate, to sell under authority of law the real estate of his intestate to pay debts, cannot in equity obtain relief by the removal of adverse *apparent* titles, or by the conversion of an equitable into a legal title. This may be, and often is, necessary to avoid sacrifice of the estate ; and to deny it, would often defeat the very object of the sale—the conversion of the estate at its full value into money for the payment of debts.

I concur in affirming the decree.