No. 2,166.

ELOISA SEPULVEDA, APPELLANT, *v.* JOSE DOLORES SEPULVEDA, SALISBURY HALEY AND JOSE DEL CARMEN SEPULVEDA, RE-SPONDENTS.

ACTIONS TO QUIET TITLE.—THE POSSESSION NECESSARY.—The possession necessary to maintain an action, under Section 254 of the Practice Act, must be such as would enable the plaintiff, without the aid of any other title, to maintain an action to eject a mere intruder therefrom.

IDEM.—If adverse possession, to a part of the land, should be shown in a third person, the suit would be considered as brought to determine the adverse claim of the defendant, only, to the land remaining in the possession of the plaintiff.

By TEMPLE, J., dissenting:

POSSESSION AT COMMON LAW.—At common law, the owner, after a mere entry, is deemed in the actual possession, until ousted by an actual adverse possession.

POSSESSION UNDER THE STATUTE.—If the owner has full dominion and control of his property (which he has, if not held adversely), he may well be said to be in possession, in every sense of the word.

IDEM.—I think the true rule, under the statute, is, that whenever the owner has a possession, whether actual or constructive, which may be intruded upon, he may bring suit to determine an adverse claim. and thus prevent an intrusion under claim of title.

APPEAL from the District Court of the Seventeenth District, Los Angeles County.

The case is stated in the opinion.

*Glassell, Chapman & Smith,* for Appellant.

The character of the "possession" necessary to maintain this action, must be determined by a fair construction of the language of the statute which authorizes it, according to its language and spirit.

*First*—As to the Language : It is a cardinal principle of construction, that where a statute "makes use of words and phrases of a well known and definite sense in law, they are to be received and expounded in the same sense in the stat-

ute." (*Harris* v. *Reynolds*, 13 Cal. 518.) Or, as Kent expresses it, "if technical words are used, they are to be taken in a technical sense." (1 Kent, C. 462.)

The word used in the 254th Section, is "possession," without any qualification whatever. We say without any qualification, because the words "by himself or tenant" are evidently *intended* for the purpose of *extending*, not *limiting*, the word possession. (*Faw* v. *Marsteller*, 2 Cranch, 23–4; *Brown* v. *Leese*, 5 Hill, 221.) It seems reasonable, also, to suppose that the word "actual" would have been used, if intended, as it *is* used in the Van Ness Ordinance. (Hitt. Art. 6817, 6824.)

The meaning of the word "possession" is well settled in the common law. (*United States* v. *Arredondo*, 6 Pet. 743.) In this case, almost the very words of this Act were under construction.

The distinction between "constructive" and "actual" possession—at least as applying to the true owner—is unknown to the common law. The words, it is true, are sometimes used; but the *distinction* is purely of California origin, and grows out of the construction of statutes peculiar to our State. While, possibly, it may be necessary to use it for the construction of such statutes, yet there are serious objections to introducing it as a principle into our general law. The dividing line between the two kinds of possession is so uncertain—the one melts into the other by such insensible gradations—that the adoption of the distinction, as a general principle of our law, cannot fail to introduce endless perplexity and confusion.

Using the terms in their strict and ordinary sense, the possession defined by our Courts as "actual," often includes possession which is purely "constructive." A man cannot, with strict propriety, be said "actually" to possess any more land than he actually stands upon, or can reach with his arms or a weapon; nor can he be said "actually" to possess even this any longer than he actually stands upon it. All beyond this is mere "constructive" possession; *i. e.*, possession implied by the law from certain facts. Possession, therefore, by a substantial fence, is as purely "constructive"

as possession by the metes and bounds of a deed. So, a man's possession of his house, while he is out of it, is purely "constructive." This last illustration, indeed, is used by the civilians to illustrate the difference between what they call "natural" and what they call "civil" possessions. (Institution au Droit Français, Louisiana Code, cited in *Suñol* v. *Hepburn*, 1 Cal. 265–6.)

There is an important distinction between "*possession united with right,*" and "*possession without reference to or in opposition to right;*" or, in other words, "adverse possession." "A simple division," says Mr. Burrill, in his Law Gloss., Art. "Possession," "which clears the subject of much  *  *  subtlety and intricacy  *  *."

It is in reference to the latter. kind of possession, only, that questions can properly arise as to the "actual" or "constructive" character of the possession, and it is to only that the test of holding by a substantial fence, cultivation, color of title, etc., can properly be applied.

In reference to the former, "the law deems every man to be in the legal seizin and possession of land to which he has a perfect and complete title; this seizin and possession is *co-extensive* with his right, and continues till he is ousted thereof by an *actual* adverse possession. This is the settled principle of the common law, recognized and adopted by this Court, in *Green* v. *Litter* (8 Cranch, 229–30); *Barr* v. *Gratz* (4 Wheat. 213–233); *Propagation Society* v. *Powlett* (4 Pet. 480, 504, 506); *Clarke* v. *Courtney* (5 Pet. 354–5.) (*U. S.* v. *Arredondo,* 6 Pet. 743; 1 Washb. on R. P. 35; 3 *Id.* 485; 6 John. 218.)

In reference to the possession of the true owner, the only distinction made by the common law was into "possession in fact," or "actual possession," and "possession in law." The former was "where a person actually entered into lands descended or conveyed to him;" the latter, "where lands were descended to a man, and he had not actually entered into them." (Jacob's Law Dict. Title "Possession," citing Bract. Lib. 2, Ch. 17. See, also, Bingham on Real Estate, 625; 3 Lit. Sec. 324; 4 Kent, C. 38; 1 Washb. on R. P. 34.)

We are willing to let our case rest on this distinction, as

the evidence clearly shows an entry on the part of appellant. But, in point of fact, even this distinction is now abolished, as to all conveyances operating by virtue of the Statute of Uses. The grantee, in such conveyances, has actual possession without entry.

It will be observed from the foregoing cases that to constitute "actual possession" (as defined in the common law) an entry only is required. After that the possession continues until an ouster by an actual adverse possession. (1 Washb. 35 ; 1 Greenl. Ev. Secs. 41, 42. See, also, *Pioch* v. *Stearns*, decided by Judge Deady, in the Circuit Court of the United States, Nov. 28, 1869.)

The meaning of the word "possession" having, therefore, a definite and well-ascertained meaning in the common law, we must presume that it is used in that sense in the Act.

The civil law agrees with the common law in the foregoing distinctions, and they are stated by the civilians with a force and scientific precision that recommends them to our careful attention. (Kaufman's McKeldey, Secs. 223, 244 ; Domat. Secs. 2122–3, 2169.)

*Second*—The spirit and intention of the Act : The Act, being remedial in its character, must be construed liberally so as to advance the remedy. (1 Kent, C. 465 ; 1 Cal. Dig. 284.) The defect intended to be remedied must also be considered. Before this Act, suit to quiet title could be brought only in a limited class of cases, and this action seems to be intended to enlarge this class (*Curtis* v. *Sutter*, 15 Cal. 262 ; *Head* v. *Folger*, 17 Cal. 149), and to give to all who are not in a position to maintain ejectment a means of testing adverse claims. In other words, it is evidently intended to be supplementary to the action of ejectment. When ousted, the holder of the true title can bring his action to recover the possession ; and, *until* ousted, he can bring his action to quiet title. Any other construction would leave entirely without remedy a very large class of landowners, and such cannot be presumed to have been the intention of the Act. "The language of this section," says the Court, in *The Merced Mining Company* v. *Fremont* (7 Cal. 319), "is general and comprehensive, and allows *any*

*person in possession* to bring the action. * * * It is evident that both parties, if honest, have an interest in knowing the true state of their respective claims at the earliest practicable period, and each party has his appropriate remedy provided by law. The party out of possession can bring his suit to obtain possession of the property, and the party in possession can bring his suit to determine the adverse title."

*Kewen & Howard*, for Respondents.

Inasmuch as the plaintiff failed to establish the rightful possession, in order to maintain this action, the nonsuit was rightly granted. (5 Cal. 166; 16 Cal. 433; 9 Johns. 61.)

The possession must be actual, not constructive, "by himself or tenant."

Says Justice Sawyer (25 Cal. 437): "If the plaintiff was not thus in possession at the time of filing the complaint, he must fail in this action, even though he have a perfect title in fee simple and the right to immediate possession." And the same doctrine is reiterated, by the same Judge, in 28 Cal. 649.

WALLACE, J., delivered the opinion of the Court:

This was an action brought by the appellant under the provisions of Section 254 of the Practice Act, for the purpose of determining an adverse claim, set up by the respondents, to certain real estate, alleged to be in possession of the appellant, and whereof she claimed to be seized in fee. At the trial, upon motion of the respondents, a judgment of nonsuit was entered against her, and from that judgment she has taken this appeal.

The motion was based upon four several grounds. The first was, that it did not appear that the appellant had *such a possession* of the premises as would enable her to maintain the action. The others presented questions of the construction and effect of certain deeds of conveyance, running to the appellant, and which she had read in evidence to establish her title to the land in controversy.

We think that the case must turn wholly upon the suffi-
ciency of the first ground of nonsuit urged, because, if the
fact of possession in the appellant was not proven, then the
nonsuit was properly granted, even though it should appear
that she had the title in fee and the right to immediate pos-
session. (*Lyle* v. *Rollins*, 25 Cal. 437.) And, upon the
other hand, if the requisite possession was shown in her,
she should not have been nonsuited, even if she had not
attempted a deraignment of title to herself, or, attempting it,
had failed to establish it. For it is not pretended that the
effect of the deeds read in evidence was to show any title in
the respondents, and, until their title was in some way made
to appear, the appellant might rest safely upon the mere fact
of her possession of the lands and the presumptions arising
therefrom in her favor.

We proceed, therefore, to consider the character of pos-
session established in the appellant by the proof. It appears
that the premises in controversy are not inclosed nor culti-
vated. It is true that the sheep and horses of the appellant
graze upon this land; not, however, under the control of
herdsmen, but only roaming at large, together with the stock
of other persons, over the whole of the rancho San Vicente,
of which the premises in controversy are a portion. We
think that these facts do not show such a possession in the
appellant as is required by the statute for the purpose of
maintaining this action. That possession should be a *pedis
possessio*—an actual occupation by herself or tenant, a sub-
jection of the land to her will and control to the exclusion of
all other persons—such a possession as would enable her,
without the aid of a deraignment of paper title, to maintain
an action to eject a mere intruder thereon. We do not mean
to be understood as holding now, that where a *pedis possessio*
of a portion of an entire tract of land is established in a
party, he might not, in such an action as this, resort to the
title deeds for the purpose of extending that possession to
the outer boundaries of the tract as against the defendant,
where no adverse possession in any part of the entire tract
appeared.

If, however, such adverse possession to a part of the land

should be shown in a third person, then the suit would be considered as brought to determine the adverse claim of the defendant, only, to the land remaining in possession of the plaintiff, as was held by this Court in *Curtis* v. *Sutter* (15 Cal. 264.)

We think that the appellant did not have such a possession of the premises as, under the provisions of the statute, and the construction it has uniformly received in this Court, entitled her to maintain this action, and the judgment of the Court below is, therefore, affirmed.

TEMPLE, J., delivered the following dissenting opinion :

This action is brought, under the 254th Section of the Practice Act, to quiet the title of plaintiff to three tracts of land, each being part of the San Vicente Rancho, in Los Angeles County.

The plaintiff proved title under the grant, and, as to possession, that one tract had been entirely inclosed by her grantor, and was so inclosed at the time it was conveyed to her, which was about eight months before the commencement of the action; since which time the fence had been removed by her.

On the second tract was standing the old ranch house, at present apparently unoccupied. During the year before the suit was commenced, a portion of this tract was cultivated by the plaintiff.

The plaintiff had upon the rancho one hundred head of horses and a hundred head of sheep, which were allowed to run over the three tracts, as well as the other portions of the rancho. There was, also, other stock upon the rancho, belonging to various persons, which, in connection with plaintiff's stock, also ranged over the whole rancho. There was not, and never had been, any adverse possession of any portion of the land.

I cannot agree with the majority of the Court that these acts do not constitute such a possession as will authorize the plaintiff to bring this suit. The plaintiff has the absolute control and dominion of the land. She has the actual use

of it, and is probably enjoying it in the most advantageous and profitable manner. She is in the actual perception of its profits. She has the highest estate known to the law— the right—coupled with the actual enjoyment. Nor do I see that her position, as owner in possession, is changed by the fact that she grazes her land in common with her neighbors, whose cattle, with hers, graze over the whole rancho. There are good reasons why a mere intruder should be held to show notorious acts of possession and exclusive occupancy, when he relies upon such possession as evidence of title; but this is no reason why the rightful owner should be held to any particular manner of using his estate; and if he is actually using it in the manner best suited to his convenience, and is in the actual perception of the rents and profits, and, besides, has full dominion and control of it, I think he is the owner in possession in the sense of the statute. It is a great mistake, in my judgment, to require from the rightful owner the same acts which are necessary to constitute adverse possession by a wrong-doer. The Courts are more frequently called upon to discuss the question as to what acts will constitute adverse possession or be evidence of title; but there is, nevertheless, a clear distinction between the acts necessary to constitute such a possession and the acts which show possession in the rightful owner.

In the one case, a *possessio pedis*, which is exclusive in its character (unless under color of title), evidenced by notorious acts, is required. But the owner, at common law, after a mere entry, was deemed in the *actual possession*, until ousted by an actual adverse possession. And this rule is not merely technical, but is founded in good sense. If an owner has full dominion and control of his property, and may, without hindrance, use it for any purpose he pleases, as he can, if not held adversely, he may well be said to be in possession, in every sense of the word. How has he any greater dominion or control of it by building a shanty upon one corner of it, as seems to be intimated in the leading opinion? (See 4 Kent, C. 38; 1 Washb. on Real Property, 34; 1 Greenl. Ev. Secs. 41–42.)

The only cases relied upon in the majority opinion are the

cases of Lyle v. Rollins (25 Cal. 437), and Curtis v. Sutter (15 Cal. 260.)

The case of Lyle v. Rollins went off on the ground that the defendant was in the actual adverse possession at the time the action was commenced.

The case of Curtis v. Sutter was brought to quiet title to a tract of land, containing eight leagues, and the complaint showed that portions of the land were held adversely by certain squatters, who, it was feared, might fortify their possessions by purchasing in the adverse claim, which was sought to be removed. In rendering the opinion of the Court, Judge Field says that the statute enlarges the class of cases in which equitable relief could formerly be sought in quieting titles, and that, to maintain a bill of this character, it was necessary that the plaintiff should be in possession, and the bill would not lie as to that portion of the ranch which was adversely held by settlers. The character of plaintiff's possession to the portions not adversely held did not appear. But the misfortune of this case, as an authority for the conclusion of the majority, is, that, beyond all question, the possession of plaintiff in the case at bar, is sufficient to sustain a bill in equity to quiet her title. To maintain that action, it was only necessary that the plaintiff should have such a possession as would sustain an ouster. The plaintiff may have been ousted from the premises, and may have recovered them in an action at law, and had restitution of them more than once, and yet had no actual occupation, and, unquestionably, in equity, could have sustained her bill to quiet her title. And although in this case I believe the plaintiff established an actual possession, I think the true rule, under the statute, is, that wherever the owner has a possession whether actual or constructive, which may be intruded upon, he may bring this suit to determine an adverse claim, and thus prevent an intrusion under claim of title. Indeed, in many States, it is now held that an action will lie in equity to remove a cloud from the title of the owner, whenever he is not in a position to have the conflicting claim determined in an action at law. (Alton Marine and Fire Ins. Company v. Buckmaster, 13 Ill. 205 ; Smith v. McConnell, 17

Ill. 135 ;' *Niven* v. *Belknap,* 2 Johns. 573; *Munroe* v. *Ward,* 4
Allen, 150 ; *Harris* v. *Smith,* 2 Dana, 10 ; *Moran* v. *Palmer,*
13 Mich. 371.)

The precise question, under this statute, has never been
decided in this State, nor, so far as I can discover, in any
State where a similar statute exists.    In *Praulus* v. *Jefferson
Gold and Silver Mining Company* (34 Cal. 558), the question
was raised, but was not passed upon, for the Court concluded
that the plaintiff had neither actual or constructive posses-
sion—though it is said by Mr. Justice CROCKETT, in stating
the conclusion to which the Court had arrived : " Our con-
clusions, therefore, are, First—That, in order to maintain
an action of this character, in respect to a mining claim on
the public domain, the plaintiff must establish, at least, a
constructive possession," etc.

There is no reason that I can see, why the benefits of this
statute should not be extended to those in constructive as
well as those in actual possession. · The chief benefits of the
statute are, that an adverse claim can be tried while the evi-
dence is available to show its invalidity and to remove a
doubt from the title, which lessens the value of the estate.
These reasons apply with equal force to a party having con-
structive possession, and he is equally unable to bring his
action at law to determine the conflicting claim, and is, per-
haps, even more liable to have his land intruded upon by
reason of it.    It can work no injury to anyone that such
claims should be tried ; on the contrary, since land has
become almost an article of commerce, it would be most
beneficial to give Courts jurisdiction of such cases.    The
statute does not require any particular kind of possession,
and I know of no authority in this Court to add qualifying
terms, especially when, as I think in this case, it is an inno-
vation upon the common law, establishing a new rule as to
what shall constitute possession when coupled with title,
and doing away with ,a principle which has been universally
recognized wherever the common law of England has pre-
vailed.