# KING *v.* AMY AND SILVERSMITH MINING COMPANY.

APPEAL FROM AND IN ERROR TO THE SUPREME COURT OF THE STATE OF MONTANA.

No. 169. Argued December 14, 15, 1893. — Decided March 5, 1894.

The side lines of the location of a lode claim, under Rev. Stat. § 2322, are those which run on each side of the vein or lode, distant not more than 300 feet from the middle of such vein.

A line in such a location which does not run parallel with the course of the vein, but crosses it, is an end line.

When, in making such a location, the claimant calls the longer lines, which cross the vein, side lines, and the shorter lines, which do not cross it, end lines, this court will disregard, in its decision, the mistake of the locator in the designation of the side and end lines, and will hold the locator to the lines properly designated by him, as it cannot relocate them for him.

THE case is stated in the opinion.

*Mr. C. W. Holcomb,* (with whom was *Mr. Walter H. Smith* on the brief,) for appellant and plaintiff in error.

*Mr. W. W. Dixon* for appellee and defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

The plaintiff and the defendant are owners, as tenants in common, of certain mining property in Silver Bow County, State of Montana, known as the Non-consolidated lode mining claim. The plaintiff owns three-fourths of the claim and the defendant one-fourth. The defendant is, besides, the sole owner of the mining claim situated in the same county and State, known as the Amy lode mining claim. Both claims are located and patented under the mining laws of the United States contained in sections 2320 and 2322 of the Revised Statutes. The Amy claim was first located and has the earlier patent.

The relative positions of these two claims are seen on the diagram in the record, which shows the course of the vein in the Amy claim upon which its location was made and the boundaries of the two claims, with the length and direction of each. The description of the two claims can be understood only by reference to the diagram, as each line is given. A copy of the diagram is produced on the next page, as without it the description will be unintelligible to the reader.

The Amy claim has a surface length of 1470 feet, and its side lines are parallel. The end lines are each 491 feet, and they are also parallel. The surface location forms a parallelogram of 1470 feet running easterly and westerly, by 491 feet running northerly and southerly.

The Non-consolidated claim lies adjoining the northwest corner of the Amy claim. Its surface shape is that of a triangle, the longest side of which joins the northerly side of the Amy claim, and, commencing seventeen (17) feet from the northwest corner of the latter, extends easterly four

hundred and eleven (411) feet in length. Its northerly side line, commencing (on the northerly line of the Amy) at the point where the first line terminates, runs in a northwesterly direction three hundred and seventy-two (372) feet to the

point where it meets the westerly line of the lode, and extends southwesterly from this point one hundred and eighty-one (181) feet to the place of beginning.

The vein of the Amy claim, on its course or strike, passes

through its northerly side line, as marked on the diagram, into the Non-consolidated ground; its apex crosses that line 184 feet easterly from the west side line of that claim, and does not again enter the Amy claim. The apex of the vein enters the south side of the Amy claim at a point within 600 feet westerly from the southeast corner of the Amy, and the dip of the vein is to the north.

We have in this description of the claims in controversy followed in a large degree that given in the brief of the defendant's counsel, for the subject does not admit of greater clearness of statement.

The plaintiff has brought this action for a partition of the Non-consolidated claim with the defendant, according to the respective rights of the parties, if that be possible; but if the property cannot be thus partitioned advantageously, then for a sale of the premises and a division of the proceeds among the owners, in conformity with such rights.

As stated above, the vein of the Amy, of which the apex lies within the surface lines of the claim, in its course passes through the northerly side line, and enters the Non-consolidated claim; and it is alleged that the vein has been there worked by the owners of that claim and valuable ore taken therefrom. The plaintiff, therefore, prays, in addition to a partition or sale of the Non-consolidated claim, for an accounting for his share, as tenant in common of an undivided three-fourths of that claim, of the ores taken from the underground workings of the vein of the Amy after it had passed into that claim, if any there were.

The defendant admits his cotenancy in the Non-consolidated claim with the plaintiff, but denies the taking of any ore from the vein of the Amy after it had passed into its ground.

The first question for determination is whether the Amy retained any right to the vein, the apex of which was within its surface lines, after it had passed through its northerly side line, or rather through the vertical plane running down that line. If the Amy retained its right to that vein after it had entered the ground of the Non-consolidated claim, it belonged to the defendant as sole owner of the Amy, and as such

owner he could not be called on to account to the plaintiff for any portion of the ores taken from it. If, on the other hand, the Amy did not retain its right to that portion of the vein after it had passed into the Non-consolidated claim, it became a part of that claim, and the proceeds of the ore there taken from it would, with other proceeds of the Non-consolidated claim, be the subject of an accounting between the plaintiff and the defendant, the owners, as tenants in common of that claim. The answer to the question must be found in the construction given to section 2322 of the Revised Statutes, which took effect December 1, 1873. That section is as follows :

" The locators of all mining locations heretofore made, or which shall hereafter be made, on any mineral vein, lode, or ledge situated on the public domain, their heirs and assigns, where no adverse claim exists on the tenth day of May, eighteen hundred and seventy-two, so long as they comply with the laws of the United States, and with state, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surfaces included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface-lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward as above described, through the end lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or ledges."

The preceding section 2320 prescribes the extent to which mining claims upon veins or lodes of quartz, or other rock in place, bearing gold, silver, or other valuable deposits on lands of the United States, may be taken up after May 10, 1872. It allows a claim to be located to the extent of fifteen hundred feet along the vein or lode, but provides that no location

shall be made until the discovery of the vein or lode within the limits of the claim located; which is, in effect, a declaration that locations resting simply upon a conjectural or imaginary existence of a vein or lode within their limits shall not be permitted. A location can only rest upon an actual discovery of the vein or lode.

The section also declares that no claim shall extend more than three hundred feet on each side of the middle of the vein at the surface; nor shall any claim be limited by any mining regulation to less than twenty-five feet on each side of the middle of the vein at its surface, except as prevented by adverse rights existing on the 10th day of May, 1872, and that the end lines of each claim shall be parallel to each other. A claim located in conformity with the provisions of this section would take the form of a parallelogram, if the course or strike of the vein or lode should run in a straight line; but such veins and lodes are often found upon explorations to run in a course deviating at different points from such line. And from this circumstance much difficulty often arises in determining the lateral rights of the locators.

Section 2324 of the Revised Statutes recognizes the power of miners in each mining district to make regulations not in conflict with the laws of the United States, or of the laws of the State or Territory in which the district is situated, governing the location, manner of locating, and amount of work necessary to hold possession of a mining claim, subject to the requirement that the location must be distinctly marked on the ground so that its boundaries may be readily traced.

It is evident from the provisions cited that the location as made and defined must control not only the rights of the claimant to the vein or lode within its surface lines, but also any lateral rights.

Section 2322, cited above, declares that the locators of all mining locations shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their location; and also the exclusive right of possession and enjoyment of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such

surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of said surface location.   The surface side lines, extended downward vertically, therefore determine the extent of the claim, except when in its descent the vein passes outside of them, and the outside portions are to lie between vertical planes drawn downward through the end lines.

The difficulty in the present case arises from the course of the vein or lode upon which the Amy location was made.   It is evident that what are called side lines of the location, as shown in the diagram, are not such in fact but are end lines. Side lines, properly drawn, would run on each side of the course of the vein or lode distant not more than three hundred feet from the middle of such vein.   In the Amy claim, the lines marked as *side* lines, cross the course of the strike of the vein and do not run parallel with it.   They, therefore, constitute end lines.   It is true the lines are not drawn with the strict care and accuracy contemplated by the statute, and which could only have been done with more perfect knowledge of the true course or strike of the vein from further developments.   But, as was said by this court in *Iron Silver Mining Co.* v. *Elgin Mining Co.*, 118 U. S. 196, 207 : "If the first locator will not or cannot make the explorations necessary to ascertain the true course of the vein, and draws his end lines ignorantly, he must bear the consequences."   The court cannot become a locator for the mining claimant and do for him what he alone should do for himself.   The most that the court can do, where the lines are drawn inaccurately and irregularly, is to give to the miner such rights, as his imperfect location warrants, under the statute.   It cannot relocate his claim and make new side lines or end lines.   Where it finds, as in this case, that what are called *side* lines are in fact *end* lines, the court, in determining his lateral rights, will treat such side lines as end lines and such end lines as side lines; but the court cannot make a new location for him, and thereby enlarge his rights.   He must stand upon his own location, and can take only what it will give him under the law.

Acting upon this principle there is no lateral right to the holder of the Amy claim by which he can follow its vein into the Non-consolidated claim.   Mistakes in drawing the lines of a location can only be avoided, as said in the case cited, by postponing the marking of the boundaries until sufficient explorations are made to ascertain, as near as possible, the course and direction of the vein.   . . .   "Even then," the court added, "with all the care possible, the end lines marked on the surface will often vary greatly from a right angle to the true course of the vein, but, whatever inconvenience or hardship may thus happen, it is better that the boundary planes should be definitely determined by the lines of the surface location than that they should be subjected to perpetual readjustment according to subterranean developments subsequently made by mine workers.   Such readjustments at every discovery of a change in the course of the vein would create great uncertainty in titles to mining claims."

Applying this doctrine to the case before us, it follows that the vein in controversy, the apex of which was within the surface lines of the Amy claim, did not carry the owner's right beyond the vertical plane drawn down through the north side line of that claim.   The Amy claim had no lateral right by virtue of the extension of the vein through what was called the north side of its claim, as that side line so called was, in fact, one of its end lines.

The judgment of the Supreme Court of Montana should therefore be

*Reversed, and judgment entered in favor of the plaintiff, for a decree of partition of the Non-consolidated claim between the parties to the suit, who are owners as tenants in common, provided such partition can be made with due regard to the respective rights of the owners, and if it cannot be thus advantageously made, that the premises be sold and the proceeds divided according to their respective rights; and further, that the respective parties render an account of the proceeds received by them, respectively, from the Non-consolidated claim, and that such proceeds be divided between them according to their respective rights.*