LANGE v. ROBINSON et al.

(Circuit Court of Appeals, Ninth Circuit. October 22, 1906.)

No. 1,295.

1. MINES AND MINERALS—LOCATION OF MINING CLAIM—DISCOVERY.

The object of the law in requiring a discovery to precede the location of a mining claim is to insure good faith on the part of the locator and prevent frauds upon the government, and to constitute a discovery which will support the location of a gold placer claim as against another mineral claimant it is not necessary that gold should have been found thereon in paying quantity, but there must have been such a discovery of gold as gives reasonable evidence that the ground is valuable for placer mining, taking into consideration its character, location, and surroundings.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mines and Minerals, § 27.]

2. SAME.

Plaintiff located certain gold placer mining claims along a creek in Alaska, and before doing so washed on each a few pans of the sediment deposited along the sides of the creek, and in each found small particles or colors of gold. Placer gold in paying quantities had been found on the bed rock on a tributary to the creek, and within a mile of such locations, and the bed rock at the place of the locations was from 125 to 150 feet below the surface. Plaintiff and other experienced miners testified that the gold found was sufficient to reasonably justify the investment of money to sink shafts. *Held*, that there was a sufficient discovery to support the locations as against another mineral claimant.

3. SAME—ACTION AGAINST ADVERSE CLAIMANT—ALASKA STATUTE.

    A plaintiff who was living in a tent on one of a number of adjoining mining claims owned by him, and had commenced the sinking of a shaft thereon, had sufficient possession to entitle him to maintain a suit under Alaska Code of June 6, 1900, c. 786, 31 Stat. 321, against an adverse claimant of the ground.

Appeal from the District Court of the United States for the Third Division of the District of Alaska.

Carr & Nye, for appellant.

J. C. Campbell, W. H. Metson, and McGinn & Sullivan, for appellees.

Before GILBERT and ROSS, Circuit Judges, and DE HAVEN, District Judge.

DE HAVEN, District Judge. This action was commenced in the District Court for the District of Alaska, Third Division, for the purpose of determining that the plaintiff is the owner and entitled to the possession of certain mineral lands, to which the defendants assert an adverse claim. At the conclusion of the evidence offered by the plaintiff the defendants moved for a dismissal of the action upon the ground that the plaintiff had failed to show that he had any legal or equitable estate in the land described in the complaint, and for the further reason that it was not shown that he was in possession of such land at the date of the commencement of the action. The motion was granted upon the ground first stated, and it was thereupon adjudged that the action be "dismissed without prejudice against the plaintiff of any kind whatsoever," the defendants to recover costs. From this judgment the plaintiff has appealed.

The lands in controversy embrace 10 separate placer mining claims, containing 20 acres each. One of these claims was located by H. W. Benson, grantor of plaintiff, one by the plaintiff for himself, and the remaining eight by the plaintiff acting as agent for others, who have since conveyed to him. The locations were made on April 15, 1905; and the first question which we will consider is whether prior to that date the locators had made such a discovery of gold thereon as entitled them to locate the lands as placer mining claims. These claims are situate on Cripple creek in the Fairbanks mining district, Alaska, and the evidence shows that prior to their location gold had been found on Esther creek, a tributary of Cripple creek. This discovery was made within less than one mile from the land in controversy. In Alaska, as indeed in all places where there is placer gold, it is almost the universal rule that the "pay streak," so called, is in and upon, or near, the bed rock; and until that is reached it cannot be determined whether any particular claim contains gold in such quantity as to be of value for placer mining. The bed rock on Esther creek is from 90 to 100 feet below the surface, while upon the land involved in this action this rock is from 125 to 150 feet below the surface, and the overlying ground is of no value; that is, it does not contain sufficient gold to pay for working it. The plaintiff is a miner of many years' experience, and testified, in sub-

stance, that before making his locations he washed upon each claim a few pie plates of the sediment deposited in and along the sides of the creek upon which the claims are located, and found in the several washings from two to six fine colors of gold. This was all of the gold actually discovered by him before he made the locations. The plaintiff also testified that his belief that there was gold on the bed rock of the claims located by him was based upon the colors which he had found, and the further facts that the same general character of sediment deposit and rock and soil formation were found on these claims as on the mineral land on Esther creek, and that in all localities where placer mining is conducted, wherever gold is found on the surface, there will be more or less on the bed rock. He also stated that the "pay streak" in lands of this character is narrow, and usually confined within the limits of an old channel, that it is often found necessary to sink many shafts before it is located, and that the sinking of shafts to such depths as is required upon the lands in controversy would be very expensive. In addition to this, one Field, an experienced miner, who prospected the ground after the locations had been made by plaintiff, and discovered therein colors of fine gold such as were found by plaintiff, testified as follows:

"Q. What would you say to the reasonableness of a man's pursuing the work of prospecting a creek where he found such indications of gold as you found there at that time, as to whether or not he would be justified in doing so?

"A. The reasonableness? Well, it is looked upon as a business proposition that after a man gets surface indication such as you find down there—that it is looked upon as a business proposition that is sufficient to justify him in expending time and money in exploring it further. There is a large amount of money invested under those conditions."

1. It will be noticed from the foregoing statement of facts that prior to making the locations under consideration plaintiff did not actually discover gold in paying quantities upon the claim located; but he did find some small particles of gold therein. Was this sufficient to give to the plaintiff the right to locate as placer mining claims the lands upon which this gold was found?

The question as to what constitutes a sufficient discovery upon which to base a valid location of a vein or lode of quartz, or other rock bearing gold or silver deposits, has often been before the courts, and a few of the decisions in relation thereto will be referred to, as the rule which they declare concerning the quantity or the value of the precious metals necessary to be found in the vein or lode before it can be located is applicable in principle in determining whether there has been a sufficient discovery of mineral-bearing earth to authorize the location of a placer mining claim. In Book v. Justice Min. Co. (C. C.) 58 Fed. 106, Judge Hawley said:

"When the locator finds rock in place containing mineral, he has made a discovery within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low. It is the finding of the mineral in the rock in place, as distinguished from float rock, that constitutes the discovery, and warrants the prospector in making a location of a mining claim."

This view is repeated by the same learned judge, in delivering the opinion of this court, in Migeon v. Montana Cent. Ry. Co., 77 Fed. 249, 23 C. C. A. 156, in the following language:

"The question as to what constitutes a discovery of a vein or lode under the provisions of section 2320 of the Revised Statutes [U. S. Comp. St. 1901. p. 1424] has been decided by many courts. All the authorities cited by appellants are referred to in Book v. Mining Co. (C. C.) 58 Fed. 106, 121. The liberal rules therein announced are substantially to the effect that, when a locator of a mining claim finds rock in place containing mineral in sufficient quantity to justify him in expending his time and money in prospecting and developing the claim, he has made a discovery within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low. with this qualification: That the definition of a lode must always have special reference to the formation and peculiar characteristics of the particular district in which the lode or vein is found. It was never intended that in such a case the courts should weigh scales to determine the value of the mineral found as between a prior and subsequent locator of a mining claim on the same lode."

In Shoshone Min. Co. v. Rutter, 87 Fed. 807, 31 C. C. A. 223, this court again had occasion to consider what constitutes a discovery of a vein or lode, or quartz-bearing lode, in place; and, in sustaining the validity of the location in controversy in that case, said:

"The discovery was made in running a tunnel, where small seams of iron oxide, quartz, and small quantities of carbonate of lead were found, two or three inches wide. These indications were of such a character as miners in that district would follow in the expectation of finding ore, and such as would justify miners in working a claim for that purpose. The rock in these seams was different from the country rock, and was of such a character as is designated by the witnesses, who were practical miners, 'as a vein containing rock in place, bearing mineral.' These facts show that the location was made in good faith, and not 'simply upon a conjectural or imaginary existence of a vein or lode,' which cannot be permitted. King v. Mining Co., 152 U. S. 222, 227, 14 Sup. Ct. 510, 38 L. Ed. 419. The seams containing mineral-bearing earth and rock, which were discovered before the location was made, were similar in their character to the seams or veins of mineral matter that had induced other miners to locate claims in the same district, which by continued developments thereon had resulted in establishing the fact that the seams, as depth was obtained thereon, were found to be a part of a well-defined lode or vein containing ore of great value. The discovery made at the time of the Kirby location was, therefore, such as to justify a belief as to the existence of such a lode or vein within the limits of the ground located."

In Erhardt v. Boaro, 113 U. S. 536, 5 Sup. Ct. 564, 28 L. Ed. 1113, the Supreme Court say:

"A mere posting of a notice on a ridge of rocks cropping out of the earth, or on other ground, that the poster has located thereon a mining claim, without any discovery or knowledge on his part of the existence of metal there. or in its immediate vicinity, would be justly treated as a mere speculative proceeding, and would not itself initiate any right. There must be something beyond a mere guess on the part of the miner to authorize him to make a location which will exclude others from the ground, such as the discovery of the presence of the precious metals in it, or in such proximity to it as to justify a reasonable belief in their existence."

In Nevada Sierra Oil Co. v. Home Oil Co. (C. C.) 98 Fed. 673, the court, after citing with approval the rule above quoted from the opinion in Book v. Justice Min. Co. (C. C.) 58 Fed. 106, as to what is a sufficient discovery of lode or vein claims, said:

"So, in respect to placer claims, if a competent locator actually finds upon unappropriated public land petroleum or other mineral in or upon the ground, and so situated as to constitute a part of it, it is a sufficient discovery, within the meaning of the statute, to justify a location under the law, without waiting to ascertain by exploration whether the ground contains the mineral in sufficient quantities to pay."

We do not understand that any different rule is laid down in Chrisman v. Miller, 197 U. S. 313, 25 Sup. Ct. 468, 49 L. Ed. 770. On the contrary, the court in that case quotes with apparent approval the following language of the Land Department in the case of Castle v. Womble, 19 Land. Dec. Dep. Int. 455, 457:

"When minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met. To hold otherwise would tend to make of little avail, if not entirely nugatory, that provision of the law whereby 'all valuable mineral deposit in lands belonging to the United States * * * are * * * declared to be free and open to the exploration and purchase.'"

And then as a result of all the authorities cited in its opinion, the court deduces the rule:

"That there must be such a discovery of mineral as gives reasonable evidence of the fact either that there is a vein or lode carrying the precious mineral, or if it be claimed as placer ground that it is valuable for such mining."

The question of discovery is in every case one of fact for the court or jury. Iron Silver Co. v. Mike & Starr Co., 143 U. S. 394, 12 Sup. Ct. 543, 36 L. Ed. 201. There must be some gold found within the limits of the land located as a placer gold claim, but it cannot be said in advance as a matter of law how much must be found in order to warrant the court or jury in finding that there was in fact a discovery such as the law requires. The question must be decided, not only with reference to the gold actually found within the limits of the claim located, but also in view of its situation with reference to other lands known to contain valuable deposits of placer gold, and whether its rock and soil formation are such as is usually found where these deposits exist in paying quantities; and, further, in considering the evidence bearing upon the general question, it must not be forgotten that the object of the law in requiring the discovery to precede location is to insure good faith upon the part of the mineral locator, and to prevent frauds upon the government by persons, "attempting to acquire patents to land not mineral in its character." Shoshone Min. Co. v. Rutter, 87 Fed. 801, 31 C. C. A. 223. And where the controversy is, as in this case, between persons claiming the land as mineral, "the rule respecting the sufficiency of a discovery of mineral is more liberal than when it is between a mineral claimant and one seeking to make an agricultural entry, for the reason that where land is sought to be taken out of the category of agricultural lands the evidence of its mineral character should be reasonably clear, while in respect to mineral lands, in a controversy between claimants, the question is simply which is entitled to priority." Chrisman v. Miller, 197 U. S. 313–323, 25 Sup. Ct. 468, 49 L. Ed. 770.

Our conclusion is that, under the rule stated in the cases to which we have referred, the plaintiff and his grantors made a sufficient discovery of gold upon the lands in controversy to entitle them to make a valid location of the same as placer claims, under the laws of the United States. There was an actual discovery of gold upon each of the claims located. They are situated near other lands presenting the same surface indications, which at the date of the location of these claims were known to be valuable for the placer gold which they contained; and these facts, according to the uncontradicted testimony of the plaintiff and that of the witness Field, above quoted, were sufficient to justify the expenditure of money for the purpose of their exploration, with the reasonable expectation that, when developed, they would be found valuable as placer mining claims. This was in our opinion all that was necessary.

2. The action was brought under section 475 of the act of June 6, 1900, entitled, "An act making further provision for a civil government for Alaska, and for other purposes." Chapter 786, 31 Stat. 321. This section provides:

"Any person in possession, by himself or his tenant, of real property, may maintain an action of an equitable nature against another who claims an estate or interest therein adverse to him for the purpose of determining such claim, estate, or interest." Chapter 786, 31 Stat. 410.

It was incumbent upon the plaintiff, in order to maintain the action under this statute, to show an actual possession of the land in controversy, or some part thereof, at the date of the commencement of the action. Sepulveda v. Sepulveda, 39 Cal. 13; Durell v. Abbott et al. (Wyo.) 44 Pac. 647. The evidence shows that plaintiff was living upon claim No. 11, in a tent, at the time the action was commenced, and had also begun to sink a shaft thereon as a preliminary step in prospecting or developing the same as a mining claim. This constituted a sufficient possession of that particular mining claim under the statute; and we are also of the opinion that there was sufficient evidence to show plaintiff's possession of the other claims described in the complaint. These claims, as we hold, were properly located as mining claims, and in such case slight acts of dominion will constitute a sufficient possession to enable the locator to maintain an action under the section above quoted.

Judgment reversed, and cause remanded for a new trial.