OVERGAARD v. WESTERBERG et al.

(Third Division. Fairbanks. December 7, 1906.)

No. 522.

1. MINES AND MINERALS (§ 14*)—PLACER MINES—LOCATION.

In the location of a valid placer mining claim, in Alaska (1) an actual marking of the boundaries must be made, and (2) it must be sufficient to enable the boundaries to be readily traced; (3) the notice of location must be actually recorded, and (4) it must be sufficient to enable the ground to be found; (5) there must be an actual discovery of gold or other mineral within the limits of the claim located, and (6) it must be a sufficient discovery to justify a prudent person in expending his time, labor, and money in further exploration.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 18–50; Dec. Dig. § 14.*]

2. MINES AND MINERALS (§ 38*)—LOCATION OF MINE—QUESTIONS OF FACT.

Marking the boundaries, the recording of the notice, and discovery, and the sufficiency of each, are questions of fact, to be decided by the jury, or the judge when trying the facts.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 108; Dec. Dig. § 38.*]

3. MINES AND MINERALS (§ 38*)—LOCATION—EJECTMENT—EVIDENCE.

In a suit in ejectment, brought to recover possession of a placer mining claim upon allegations of a prior valid location, where neither the pleading nor the testimony showed an actual, but only a constructive, ouster, held, the burden is on plaintiff to prove the affirmative of the issue. He must recover, if at all, on the strength of his own title, and not on the weakness of that of defendants. The location is the plaintiff's title. If good, he can recover; if bad, he must be defeated.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½, 102½; Dec. Dig. § 38.*]

4. MINES AND MINERALS (§ 17*)—DISCOVERY—PLACE.

There is no rule of place of discovery except that laid down by the statute, that discovery must be made within the limits of the claim located. It may be made on a mountain top, on the hillside, or in the valley, on the surface of the ground, on bed rock, or at any midway point. So that discovery is actually made within the limits of the claim located, and is sufficient to justify a prudent man in spending his labor, time, and money in further work, it is sufficient, without regard to the altitude or depth of its location.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 24–28; Dec. Dig. § 17.*]

This is a suit in ejectment, brought by the plaintiff to recover the possession of placer mining claim No. 17 below discovery on Tenderfoot creek, in the Tanana mining and recording district, Alaska. When the case was called for trial, counsel for plaintiff and defendants, by stipulation in open court, waived a jury trial, whereupon the jury was discharged and the case was tried to the court instead of jury. It is alleged in the complaint:

"That the plaintiff is now the owner in fee as against all persons except the United States, and is entitled to the possession, and on and prior to the 1st day of July, 1905, was lawfully possessed as such owner in fee, and entitled to the possession of that certain tract of land known and described as creek placer mining claim No. 17 below discovery on Tenderfoot creek, extending 1,320 feet across said creek and 660 feet up and down stream, containing 20 acres, in the Salchaket recording district, Third judicial division, district of Alaska. That while plaintiff was such owner, and so seised and possessed, and entitled to the possession, of said land and premises, the defendants, on or about the 1st day of July, 1905, entered into the possession of the demanded premises and ousted and ejected the plaintiff therefrom, and now unlawfully withhold the possession thereof from the plaintiff to his damage. Wherefore the plaintiff prays judgment against the defendants: (1) For the recovery of the possession of the demanded premises; (2) for the costs of this action."

The plaintiff testified that on March 11, 1905, he located the claim in question by marking its boundaries by two center stakes; that on the next day his partner set out the four corner stakes; that he filed a notice of such location and caused it to be recorded on March 21, 1905; and he testifies that thereafter and on April 22, 1905, he made a discovery of gold on the claim.

For answer to plaintiff's complaint, the defendants deny the whole thereof, and especially deny plaintiff's possession, ouster, and title, and as an affirmative defense defendants allege that on December 29, 1905, the claim was located by Westerberg; that subsequent to such location and prior to the commencement of this action Westerberg sold, assigned, and transferred to the defendant Shropshire an undivided one-half interest in the claim; and specially allege:

"That ever since the staking of said claim by said Emil J. Westerberg, as hereinbefore specified, said Emil J. Westerberg has by himself, and subsequent to the transfer of said undivided interest to J. F. Shropshire has by himself and said J. F. Shropshire, been in the lawful possession of said ground and the whole thereof, and said defendants are now in the possession of said property and the whole thereof, and are actively engaged in prosecuting work on said ground."

The evidence of the defendants discloses that subsequent to their entry on December 29, 1905, they marked the boundaries of the claim so that they could readily be traced, recorded their notice of location, and have actually possessed the ground and have sunk shafts thereon, one of them to a very great depth, in an endeavor to find the pay streak which is believed to exist something like 190 feet from the surface; that they have erected a boiler house, put machinery upon the claim for the purpose of working it, and have mined the same extensively in an endeavor to locate the pay streak. Other facts are stated in the opinion.

Miller, De Journel & McLachlen, for plaintiff.
McGowan & Clark, for defendants.

WICKERSHAM, District Judge. The prospector who wishes to create a valid placer mining location upon the public domain and acquire an undisputed title thereto must perform three several acts, each of which is made a condition precedent to the passing of title by possession or patent by the United States statutes, viz.: (1) Marking the boundaries; (2) recording the notice of location; and (3) discovering mineral on the claim.

1. Rev. St. U. S. § 2324 (U. S. Comp. St. 1901, p. 1426), contains the mandatory provision that:

"The location must be distinctly marked on the ground, so that its boundaries can be readily traced."

There is no escape from this requirement. Until this is done the location is not complete. The requirement is an imperative and indispensable condition precedent to a valid location, and is not to be frittered away by construction. Lindley on Mines (2d Ed.) 371.

2. Section 15 of "An act making further provision for a civil government for Alaska, and for other purposes," approved June 6, 1900, declared the law in Alaska that:

"Notices of location of mining claims shall be filed for record within ninety days from the date of the discovery of the claim described in the notice." 31 Stat. 327, c. 786.

3. By section 2329, Rev. St. (U. S. Comp. St. 1901, p. 1432), placer claims are "subject to entry and patent, under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims." By section 2320, Rev. St. (U. S. Comp. St. 1901, p. 1424), "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." Chrisman v. Miller,

197 U. S. 313, 25 Sup. Ct. 468, 49 L. Ed. 770. In all legislation, whether of Congress, or of the state or territory, and by all mining regulations and rules, discovery and appropriation are recognized as the sources of title to mining claims, and development by working as the condition of continued ownership until a patent is obtained. There must be something beyond a mere guess on the part of the miner to authorize him to make a location which will exclude others from the ground, such as the discovery of the presence of the precious metals in it, or in such proximity to it as to justify a reasonable belief in their existence. Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. 560, 28 L. Ed. 1113. It is a rule among miners on the public lands, so often brought to our attention and so often declared that we may speak of it as part of our judicial knowledge, that discovery and appropriation are the source of title to mining claims, and that development by working is the condition of their continued possession. Jennison v. Kirk, 98 U. S. 453, 457, 25 L. Ed. 240; Jackson v. Roby, 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990. This was the rule before Congress by its legislation sanctioned it. O'Rielly v. Campbell, 116 U. S. 418, 422, 6 Sup. Ct. 421, 29 L. Ed. 669. The preceding section 2320 prescribes the extent to which mining claims upon veins or lodes of quartz, or other rock in place, bearing gold, silver, or other valuable deposits on lands of the United States, may be taken after May 10, 1872. It allows a claim to be located to the extent of 1,500 feet along the vein or lode, but provides that no location shall be made until the discovery of the vein or lode within the limits of the claim located, which is, in effect, a declaration that locations resting simply upon a conjectural or imaginary existence of a vein or lode within their limits shall not be permitted. A location can only rest upon an actual discovery of the vein or lode. King v. Amy & Silversmith Min. Co., 152 U. S. 222, 226, 227, 14 Sup. Ct. 510, 38 L. Ed. 419.

Mining claims on public lands are property in the fullest sense of the word, and may be sold, transferred, mortgaged, and inherited, without infringing the title of the United States. Forbes v. Gracey, 94 U. S. 762, 24 L. Ed. 313. A mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent. Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735. The character of the title to a valid mining location is thus more particularly described by the Supreme Court of the United States:

"They were the discoverers of the claim. They marked its boundaries by stakes so that they could be readily traced. They posted the required notice, which was duly recorded in compliance with the regulations of the district. They had thus done all that was necessary under the law for the acquisition of an exclusive right to the possession and enjoyment of the ground. The claim was thenceforth their property. They needed only a patent of the United States to render their title perfect, and that they could obtain at any time upon proof of what they had done in locating the claim, and of subsequent expenditures to a specified amount in developing it. Until the patent issued the government held the title in trust for the locators or their vendees." Noyes v. Mantle, 127 U. S. 348, 8 Sup. Ct. 1132, 32 L. Ed. 168.

The plaintiff in this case claims that kind of a title to the mining claim in controversy and seeks to have it declared by the verdict of this court.

The constitutional power "to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States" is vested in Congress without limitation. United States v. Gratiot, 39 U. S. (14 Pet.) 526, 536, 10 L. Ed. 573. Congress proposes the plan, and states the contract and consideration upon which the public lands will be disposed of, by statutory enactment. If a citizen wishes to accept the offer, and thus enter into the contract to purchase, he must comply with the terms proposed and pay the consid-

eration. These terms differ as the lands to be disposed of differ in character. The contract for the sale of agricultural lands includes the consideration on the part of the purchasing settler of settlement, cultivation, residence, and final payment, and a fraudulent evasion of any part of the consideration by the settler renders the contract void, and the patent, if issued, subject to revocation for the fraud. United States v. Minor, 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110. And this rule applies also to frauds in the acquisition of lands under railroad grants, the timber and stone act, the desert land law, the townsite law, and the mining law. United States v. Iron Silver Mining Co., 128 U. S. 673, 9 Sup. Ct. 195, 32 L. Ed. 571.

This last case was a suit in equity to cancel two patents for alleged placer mining claims in Colorado. The bill for the cancellation of these patents alleges that they were obtained upon false and fraudulent representations that the land embraced by them was placer mining ground and contained no vein or lodes of quartz or other rock bearing gold or silver or other metal, and that the patentee had performed the work upon each tract required by law to entitle him to enter it as a placer claim; whereas, in fact, the land was not placer mining ground, but did contain quartz veins of great value, and the work required to enter the tracts as placer claims had never been performed. In the opinion, written by Judge Field, the court said:

"These allegations are specifically denied by the defendants in their answer, and the proofs in the case were directed to establish them on the one hand, and to refute them on the other. If established, the government could justly demand a cancellation of the patents. The statutes providing for the disposition of the mineral lands of the United States are framed in a most liberal spirit, and those lands are open to the acquisition of every citizen upon conditions which can be readily complied with. It is the policy of the government to favor the development of mines of gold and silver and other metals, and every facility is afforded for that purpose; but it exacts a faithful compliance with the conditions required. There must be a dis-

covery of the mineral, and a sufficient exploration of the ground to show this fact beyond question. The form, also, in which the mineral appears, whether in placers or in veins, lodes, or ledges, must be disclosed so far as ascertained. Misrepresentations knowingly made as to these matters by the applicant for a patent will afterwards justify the government in proceeding to set it aside. The government has the same right to demand a cancellation of the conveyance of the United States when obtained by false and fraudulent representations as a private individual when a conveyance of his lands is obtained in like manner. In this respect the United States, as a landed proprietor stands upon the same footing as the private citizen."

In Lange v. Robinson, 148 Fed. 799, 79 C. C. A. 1, the Circuit Court of Appeals said:

"And, further, in considering the evidence bearing upon the general question, it must not be forgotten that the object of the law in requiring discovery to precede location is to insure good faith upon the part of the mineral locator, and to prevent frauds upon the government by persons attempting to acquire patents to land not mineral in character.'

Under the authorities above cited the patent from the United States to a placer mining claim is but the formal admission of the miner's title which he had previously acquired by his "faithful compliance with the conditions required" by the statutory contract. The conditions with which he must faithfully comply to initiate a valid placer mining claim in Alaska are recording, marking the boundaries, and discovery. Without he shall record his notice of location within 90 days from the discovery of the claim, or, if thereafter, prior to intervening rights, there is no valid location; if he shall fail or refuse to so mark the boundaries of his claim that they can be readily traced, there is no valid location; and, to repeat Judge Field's exact words in the case last quoted, "there must be a discovery of the mineral, and a sufficient exploration of the ground to show this fact beyond question," before there is a valid location. Recording, marking the boundaries, and discovery are three of the most important conditions required to be per-

formed by the applicant for a placer mining patent, and upon such an application the faithful performance of each must be alleged and proved.   And, to quote Judge Field again:

"Misrepresentation knowingly made as to these matters by the applicant for a patent will afterwards justify the government in proceeding to set it aside."

The patent is set aside upon the theory that each of such acts was a necessary condition precedent to the creation of a valid mining claim.

I have called particular attention to this phase of the mining law because counsel for plaintiff in this case, as they have done in other similar cases, strongly contend that a liberal interpretation of the law should be adopted, since both plaintiff and defendants admit the ground to be mineral in character, and the sole question is one of priority.   Stress is laid upon Judge Hawley's expression in Migeon v. Montana Cent. Ry. Co., 77 Fed. 249, 23 C. C. A. 156, again approved by the Circuit Court of Appeals in Lange v. Robinson, that:

"It was never intended in such cases that the courts should weigh scales to determine the value of the mineral found as between prior and subsequent locators of a mining claim on the same lode."

This is an oft-quoted citation by those who seek to use it to bolster up a weak or fraudulent case.   In the case at bar it certainly cannot be contended that this court should weigh scales to determine the value of the gold discovered between plaintiff and defendants.   If the plaintiff located the claim by marking its boundaries so that they could be readily traced, recorded his notice of location within 90 days, and actually discovered sufficient gold within the limits of the claim located to justify a prudent person in further expending time, labor, and money in the development of the ground, he is entitled to a verdict; and it is immaterial what the defendants may have done thereafter.   On the other hand, if the plaintiff did not so mark,

record, and discover, the verdict should be against him; and, again, it is immaterial what the defendants did subsequent thereto. The burden is on plaintiff to prove his case by a fair preponderance of the evidence. If he does, he is entitled to a verdict; if he does not, the verdict should be against him. Defendants' subsequent discovery has nothing to do with the verdict. Not even in an equity case can the court by weighing scales in that way rob one who first faithfully complies with the statute of the benefit of the nation's offer. This much-quoted sentiment is without law or logic to support it when offered in excuse of a failure to faithfully comply with the conditions of the statute.

Nor should there be a confusion of terms. There is a marked difference between a liberal construction of the mining statutes and a liberal consideration and application of the evidence. When the Circuit Court of Appeals suggested that it was never intended to weigh scales to determine the value of the mineral found as discovery in an action between a prior and a subsequent locator of the same ground, reference was made to weighing evidence, and not the law. No decision has been called to my attention which authorizes this court to subtract from or add to the statutory requirements of marking, recording, and discovering mineral. The United States offers to dispose of its valuable minerals and the possessory or fee-simple title to the lands in which they are found to the miner who shall mark, record and make "discovery * * * within the limits of the claim located." The contract by which the government thus proposes to dispose of its mineral lands is statutory, fixed, and certain. This court can neither add to nor subtract from it, and the miner must faithfully comply with its terms and pay the consideration which the government demands if he hopes to acquire a valid title. The Supreme Court of the United States in Chrisman v. Miller, 197 U. S. 313, 25 Sup. Ct. 468, 49 L. Ed.

3 A.R.—12

770, and in other cases, has defined the meaning of "discovery," and the Circuit Court of Appeals, Ninth Circuit, has quoted those rules in numerous decisions, but recently again in Lange v. Robinson, leaving nothing for this court to do but to apply the evidence in cases before it to statutory, fixed, and certain rules. The litigant is bound by those laws and rules of construction equally with the court, and unless he faithfully complies therewith the court can give him no relief.

Questions of fact, however, are for the determination of the jury, or in equity and stipulated law cases by the trial judge. Section 163 of the Code of Civil Procedure of Alaska declares that two kinds of issues are involved in the trial of an action: First, of law; and, second, of fact. Section 168 provides that issues of law shall be tried by the court, and issues of fact by the jury. Section 208 provides that trial by jury may be waived by stipulation, and the questions of fact involved submitted to the decision of the court; and section 210 provides that "the finding of the court upon the fact shall be deemed a verdict." In this case the jury was waived by stipulation in open court, and the questions of fact are submitted to the trial judge. That decision will be in effect a verdict, and will stand as the verdict of a jury. Sitting as a jury, it is the duty of the court to judge of the effect and value of evidence addressed to him. He is not bound to find in conformity with the declarations of any number of witnesses which do not produce conviction in his mind against a lesser number or other evidence satisfying to his mind. If he believes the testimony of a witness to be false, he may disregard it; if false in one part, he may distrust it in others. He shall apply the statutory rule that in civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory the finding shall be according to the preponderance of evidence. Section 673, Code Civ. Proc.

This is a suit in ejectment. The evidence does not disclose,

and counsel for plaintiff do not contend, that plaintiff had actual possession of the mining ground in dispute at the time of defendant's entry, or that there was an actual ouster. Both possession and ouster were constructive, and based upon the allegations and proofs that plaintiff had made a valid placer mining location of the land prior to the entry of the defendant Westerberg thereon on December 29, 1905, and that by his entry and continued possession the plaintiff was ousted. The burden is on plaintiff to prove the affirmative of the issues tendered by him. He must recover, if at all, on the strength of his own title, and not on the weakness of that of the defendants. Since he does not rely on actual possession and actual ouster, he must affirmatively establish every necessary element to constitute his prior valid title under the placer mining laws by a fair preponderance of the evidence. The right to the possession comes only from a valid location. Belk v. Meagher, 104 U. S. 279, 284, 26 L. Ed. 735. The location is the plaintiff's title. If good, he can recover; if bad, he must be defeated. Gwillim v. Donnellan, 115 U. S. 45, 50, 5 Sup. Ct. 1110, 29 L. Ed. 348.

The three essential and necessary facts which he must establish by a fair preponderance of the testimony are, first, marking; second, recording; and, third, discovery. In Alaska (1) an actual marking is necessary (section 2324, Rev. St. U. S.), and (2) it must be sufficient to enable the boundaries of the claim to be readily traced (1 Lindley on Mines, § 373; Book v. Justice [C. C.] 58 Fed. 106, 113); and (1) the notice of location must be actually recorded (section 15, Act June 6, 1900, 31 Stat. 327), and (2) the notice must be sufficient (1 Snyder on Mines, § 416; Hammer v. Garfield Min. Co., 130 U. S. 291, 298, 9 Sup. Ct. 548, 32 L. Ed. 964); and there must be (1) an actual discovery of gold or other mineral made within the limits of the claim located (section 2320, Rev. St. U. S.; King v. Amy & Silversmith Min. Co., 152

U. S., 222, 14 Sup. Ct. 510, 38 L. Ed. 419), and (2) it must be sufficient to justify a prudent person in expending his time, labor, and money in further exploration (Iron Silver Co. v. Mike & Starr Co., 143 U. S. 394, 404, 12 Sup. Ct. 543, 36 L. Ed. 201; Chrisman v. Miller, 197 U. S. 313, 25 Sup. Ct. 468, 49 L. Ed. 770; Lange v. Robinson, 148 Fed. 799, 79 C. C. A. 1). Each of these three essential elements, and each subdivision thereof, is a question of fact, and not of law. Each is a question of fact to be decided by the jury, or by the judge when trying the facts instead of a jury. Whatever doubts may have existed in this territory have been set at rest by the late decision of the Circuit Court of Appeals in Lange v. Robinson, wherein the court says plainly:

"The question of discovery is in every case one of fact for the court or jury. There must be some gold found within the limits of the land located and claimed as placer ground, but it cannot be said as a matter of law in advance how much must be found in order to warrant the court or jury in finding that there was in fact discovery such as the law required."

This language of the Circuit Court of Appeals was drawn from Iron Silver Co. v. Mike & Starr Co., 143 U. S. 394, 404, 12 Sup. Ct. 543, 36 L. Ed. 201.

And in Chrisman v. Miller, supra, though there was an actual discovery of mineral within the limits of the claim located, the Supreme Court held it to be insufficient, saying:

"There was not enough in what he claims to have seen to have justified a prudent person in the expenditure of money and labor in exploitation for petroleum. It merely suggested the possibility that the ground contained oil sufficient to make it 'chiefly valuable therefor.'"

The verdict in the case of Iron Silver Co. v. Mike & Starr Co. was rendered by a jury, that in Chrisman v. Miller by the judge as the trior of facts, and both were sustained on the question of the sufficiency of the mineral to justify exploitation.

I have been thus particular to point out that the question of *actual* discovery and *sufficient* discovery are both questions of fact, and not of law, because counsel have urged upon the court that the Circuit Court of Appeals in the case of Lange v. Robinson has determined as a matter of law just what actual finding of gold is sufficient to constitute discovery, or, as it is tersely put:

"That court in that case has given us a yardstick to measure the quantity of gold necessary to constitute discovery on both law and fact."

But a moment's inspection of the case shows that, not only did that court not attempt to lay down such a rule, but it expressly stated that:

"The question of discovery is in every case one of fact for the court or jury."

In that case there was no final verdict by a jury or the court —no finding of fact by the trial court. The case was dismissed at the conclusion of plaintiff's testimony, upon motion of the defendant, upon the ground that the plaintiff had failed to show that he had either a legal or equitable estate or possession of the ground. The Circuit Court of Appeals sat as a jury on the appeal in that case, the evidence before them was admitted to be true, there was no conflicting or opposing testimony, and upon the whole of the admitted facts their verdict was that there was sufficient evidence to support both discovery and possession. This court was reversed upon the evidence and its sufficiency. The case establishes that in that case, and upon that evidence, the Circuit Court of Appeals rendered its verdict that discovery and possession were proven. But the court very properly said that in every other case the trial court or jury should weigh the evidence and return the verdict, and that duty now confronts this court.

Some question is made by counsel about the place of discovery, and surface discovery and bed rock discovery are discussed as if some rule of law provided where discovery must be made. There is no rule of place of discovery, except that laid down by the statute, that discovery must be made within the limits of the claim located. It may be made on a mountain top, on the side hill, or in the valley; on the surface of the ground, on bed rock, or at any midway point. So that discovery is actually made within the limits of the claim located, and is sufficient to justify a prudent man in spending his labor, time, or money in further work, it is sufficient, without regard to the altitude or depth of its location.

In the case at bar the testimony of the plaintiff, Overgaard, was that he camped in the vicinity of the mining claim in controversy on March 11, 1905; that he first went on the ground and set up an upper and lower center stake that afternoon, and on the next day he sent his partner, Mortenson, to put up corner stakes for him. Overgaard then returned to the town of Fairbanks, 75 miles away. On March 21st he filed and caused a notice of location to be recorded for the claim at Fairbanks. On April 22d he again paid a passing visit to the claim while on his way up the river. He testified that on that day, no one being with him, he took six pans of dirt from the surface of the ground—four from an exposed gravel bar on the lower part of the claim near the center stake, a fifth from the right limit upper corner in slide material, and the sixth from the lower left quarter from gravel underneath a foot or more of moss and muck. He testified that he carried each pan separately to the open water in the Tanana river and washed it, and found colors of gold in each pan. He said he built a fire to thaw the gravel on the bar where he got the four pans, but does not say how he loosened the ground for the other two. He testified that the gravel bar covered some acres and that the gravel was exposed in different places.

Mortenson testified that he was Dr. Overgaard's partner, and that on the 12th day of March he went on the claim at Overgaard's request, and set out the four corner stakes and blazed the lines. He also said that after Overgaard left for Fairbanks he did "considerable panning along the creek, along the bars in front of Tenderfoot creek," and that he found gold sometimes, and no gold other times. He testified that the gravel he panned was not frozen, and did not require thawing. His testimony in chief touching the places where and the quantity which he panned was general and not particular in either respect; but on cross-examination he was asked how many pans he took, and replied:

"Oh, I took maybe two pans, because I packed it down on one trip."

Pressed a little later, he said it was "about three maybe," and that he found colors of gold. He did not thaw the ground on March 12th, though Dr. Overgaard testified that he did thaw the same ground on April 22d. Mortenson was also alone when he made his alleged discovery. This is the substance of all the testimony offered by plaintiff to prove marking and discovery. Neither had a witness in corroboration of his panning or finding gold, and no other witness in the case testified that gold was or could be found on the surface on that claim or anywhere in the immediate vicinity.

The only testimony offered in corroboration of that of Overgaard and Mortenson that gold could be found on the surface of this claim was that of Thompson, Boulangier, Marcotte, and Bulette, who testified that on October 19, 1906, only six days before they were called on the witness stand, they went together to his claim, on telegraphic request of plaintiff, and panned from a small dump of gravel at the mouth of a shaft dug by the defendants, and found colors of gold. They testified that this shaft was filled with water, but they thought it was only four or five feet deep. They did not testify that they sought or found colors of mineral on the

surface at any of the places mentioned by Overgaard or Mortenson, and their finding was confined to the dump thrown out by defendants in sinking a shaft.

Overgaard testified that he did not go again on the claim after April 22d until December 29, 1905, when, accompanied by two employés, to one of whom he promised a lease for labor, he visited it and found defendant Westerberg in possession, occupying a cabin thereon, and with two uncompleted mining shafts, in one of which he was at work. He remained but a short time on the claim, had lunch, and talked with Westerberg about the claim, told him that he had formerly staked the ground, advised him to come to town and see him and his partners about the matter, and then left and has never returned. This completes a summary of all that was done by or for the plaintiff upon the claim, and these are the facts upon which he bases his right to recover possession of the ground.

The defendants' testimony shows that some time in the summer of 1905, subsequent to April 22d, one Svard located this claim and built a cabin on it, but abandoned it. On December 29, 1905, the defendant Westerberg, finding the ground vacant and unoccupied, with no sign of mining work thereon, entered and began active work in mining. Some three or four days after his location, and about January 1–3, 1906, Dr. Overgaard came upon the claim. Overgaard only remained at the claim for lunch. Westerberg says Overgaard told him that he had formerly staked the claim, but that he (Westerberg) had the better right thereto, and that he did not intend to try to hold it. After some friendly conversation, Overgaard left and never returned to the claim. Thereafter Westerberg bought Svard's cabin and rights to the claim, and sunk shafts on the property. He sold a half interest to Shropshire, they procured a boiler and other mining outfit, built a boiler house, and sunk a shaft 140 feet into the gravels and carried on the

project of exploiting the ground continuously and in good faith. The evidence of Shropshire was that he paid $2,000 for his half interest, and without any notice of Overgaard's claims. The evidence offered by the defendants showed good faith and actual compliance with the mining laws, and open, notorious, and continued possession.

The defendants also showed by a number of miners who were familiar with the ground that careful search had been made by them over the whole surface of this claim, and extensive panning on the surface, but the unanimous evidence of these witnesses was that no gravel bars existed there, and no gold or other minerals could be found by such surface panning.

Plaintiff rests his case upon his alleged valid placer mining location of the ground in controversy, and the sufficiency of these facts is now to be determined. His notice of location was actually recorded and is sufficient in time and contents. The objection made by Shropshire that it was recorded in Fairbanks, and that when he searched the records at Richardson, in the precinct where this claim was located, he did not find it, and therefore had no notice of plaintiff's claims when he purchased from Westerberg, cannot exclude it. At the date when plaintiff located, to wit, in March, 1905, the Tenderfoot creek was in the Fairbanks precinct, and when a new precinct was created by the court the record of his location was not copied into the records of the Salchaket precinct, where the claim was then located. This, however, was not the fault of plaintiff, and was not such a defect as to excuse defendant Shropshire from finding the notice in the old precinct. This essential act in the creation of a valid placer mining claim was proven to my satisfaction.

The proof in relation to the sufficiency of the marking of the boundaries of his claim by the plaintiff is not so satisfactory. His actual marking to a degree is admitted. The

upper center post, a blazed tree, is still standing and known to defendants. But beyond that single blaze everything is denied by defendants and their witnesses. Overgaard testified that on March 11th he set the two center stakes as his base line; and Mortenson testified that he set the four corner stakes the next day. Overgaard testified that he saw the four corner stakes in April, and that they were numbered 1, 2, 3, and 4. Mortenson says they were not numbered, but just marked "corners of 17 right and left hand, as we always do." Overgaard was positive about the numbering, and, though Mortenson's attention was particularly called to Overgaard's statement, he still denied it. As to marking the boundaries Mortenson said:

"I don't recollect any special blazing; but, whenever a man goes through with an ax, anything that is in his way he generally blazes it."

A most skillful examination by his attorney failed to get Mortenson to say more than he "blazed maybe now and then," and that he thinks he recollects that he saw two corner stakes from the center stake. His testimony as to the fact of setting these corner stakes and cutting out the lines so that they could be traced is singularly meager and unsatisfactory. Overgaard is clear and positive about his blazing on his upper center post and the fact of its existence, but as to his lower center post he is always in doubt. Counsel asked him to tell about the lower center post, and he answered:

"If I remember right, the lower center stake was a dead tree, a dry tree, about three inches through, squared on four sides and cut off."

Being asked, "Is that stake standing there yet?" he said, "I don't know." Overgaard and Mortenson were never at those stakes in company. No one else corroborates their testimony as to the existence of the stakes, the lines, or the markings on the stakes. Overgaard says one Connover was

with him when he set the center stakes, and though he said Connover was often in town he was not called as a witness.

Westerberg, Honkola, Lof, and other witnesses who are miners and residents in the immediate vicinity testified that they had examined this claim carefully, and, with the exception of the upper center° stake, there were none set by or for Overgaard on this claim, that no lines had been cut, no boundaries marked, and that, excepting the upper center stake, there was an utter absence of any stakes or other monuments by which the boundaries of the claim could be readily ·or at all traced.

Counsel, however, appeals to the rule that one who has actual notice ·of the location cannot complain of the want of marks, and the case of McKinley Min. Co. v. Alaska Min. Co., 183 U. S. 563, 22 Sup. Ct. 84, 46 L. Ed. 331, is cited in support of their contention that the notice on the admitted upper center stake is' sufficient to enable the boundaries of the claim to be traced. In that case the locator put a notice ·on a stump in the creek, claiming 1,500 feet running with the creek and 300 feet on each side of the center of the creek, and the Supreme Court said:

"These notices constituted a sufficient location. The creek was identified, and between it and the stump there was a definite relation, which, combined with the measurements, enabled the boundaries of the claim to be readily traced. Haws v. Victoria Copper Mining ·Company, 160 U. S. 303 [16 Sup. Ct. 282, 40 L. Ed. 436]."

But in this case Tenderfoot creek was not used as the base line. Overgaard testified that he set two center posts 660 feet apart as a base line, claiming 660 feet on each side of this base line, and without reference to the creek. He wrote ·on his upper center stake:

"I, the undersigned, claim 20 acres of mineral ground, 660 feet ·down stream by 660 feet on each side of the center posts."

Under the rule laid down in the McKinley Creek Case, both these stakes must have been located, else there was no base line and nothing definite from which to measure. It is my judgment as the trior of the facts that the plaintiff has failed to prove by a fair preponderance of the evidence, or at all, that he marked the boundaries of his location, or caused them to be marked, so that they could readily or at all be traced.

The evidence offered by the plaintiff in support of his discovery is challenged and denied by the defendants. Overgaard testified that he panned six pans of gravel on April 22, 1905, and found colors of gold in each pan. No one was with him, and no one saw the mineral which he says he found. Mortenson testified that on March 12th he also found colors by panning on the surface, though his evidence on that point, and especially as to the exact spot where he panned, is decidedly vague and uncertain. No one was with him, and no one saw the spot where he panned or the mineral which he says he found. Both testified that there were exposed gravel bars on the claim from which they panned. Thompson, Boulangier, Marcotte, and Bulette were sent to this claim on October 19, 1906, six days before they testified, to procure corroborating evidence of discovery. While they sought at first to convey the impression that they panned from surface gravel it was brought out on cross-examination that they panned in company from the gravel out of one of Westerberg's shafts. This was not corroborating evidence that Overgaard and Mortenson found gold in gravel on the surface. If it can be given any effect, it must be that it demonstrated that these four witnesses panned in the only place on the claim where, as miners, they expected to find gold. It certainly did not support plaintiff's evidence that he found gold on the surface.

On the other hand, Westerberg, corroborated by a dozen miners from Tenderfoot creek, swore positively, after careful examination and thorough familiarity with the ground, that there were no gravel bars on the claim, and that wide and careful panning by competent persons demonstrated that no gold or other mineral could be found on the surface. The surface was shown to be swampy in part and heavily timbered in its greater area; that no gravel bars are found except near the Tanana river nearly or quite 1,000 feet away. Certainly the overwhelming weight of the testimony supports the defendants in their allegation of that fact.

But, the plaintiff answers, that is negative testimony. The fact that defendant cannot find colors is no proof that plaintiff did not find them. It may not be proof that plaintiff did not find colors; but the fact of exposed gravel or not is clearly one which admits of positive proof, and the great weight of evidence is that no such exposed gravel can be found on the claim. Opposed to Overgaard and Mortenson on that question are a dozen miners, who live on that creek and are familiar with the ground, and without exception they say that there are no such exposed gravel bars, and that after such care as miners take to find surface colors they can find none. This certainly is sufficient to cast doubt on the plaintiff's testimony on that point.

Then, too, the plaintiff has had nearly two years—two open summer seasons—to get clear, convincing, and positive proof of the fact, and has not done so. The witnesses they sent there panned the gravel from defendants' dump, and no attempt has been made by Overgaard to demonstrate the simple fact to which he testified, viz., that exposed gravel bars existed on the claim and that colors of gold could be found therein. Plaintiff has known ever since this suit was begun on June 28th that discovery and marking the boundaries were the fundamental facts in the case, yet made no attempt to

procure the most certain and satisfactory proof of those facts by the personal examination of reliable persons. That failure brings grave suspicion upon the class of testimony which they do produce to support those facts under the very express terms of section 673 of the Code of Civil Procedure, which provides:

"That evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict; and, therefore, that if the weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust."

In this case it was within the power of the plaintiff to go upon this ground and point out the exposed gravel bars, and to pan there and show the gravel and gold if any existed. It was within his power to point out the stakes which Mortenson set and make clear, positive, and convincing proof of those facts. He did not do it, though he appreciated the importance of the testimony and had both time and opportunity to do so. Failing therein, this court is bound to follow the statutory rule that the weaker and doubtful "evidence offered should be viewed with distrust."

When Overgaard came on the claim three or four days after Westerberg entered on December 29, 1905, the testimony of Westerberg is that Overgaard expressed his intention to abandon the claim, and the same expression of intention was testified to by Juntilla. While Overgaard denied the abandonment when asked leading questions, still he admitted such facts and conversations in relation thereto as satisfied me beyond doubt that Westerberg's testimony was true. From the evidence I am constrained to hold that he did voluntarily abandon his location early in January, 1906, prior to the sale to Shropshire, and prior to bringing this action.

After seeing and hearing all the witnesses, after careful

consideration of all the evidence, after weighing the same and considering the whole case, it is my judgment upon the evidence that plaintiff did not at any time so mark the boundaries of the claim in controversy that they could be readily traced, or at all; that he only marked one upper center stake, or tree, and no other; that neither Overgaard nor Mortenson, nor any one for them or for any of the plaintiffs, on March 12 or April 22, 1905, or at any other time, made any actual discovery of gold or other mineral within the limits of the claim located; and it is my judgment upon the evidence that, if Overgaard did find the colors he testified to in the place and under the conditions described, it was not sufficient to justify a prudent person in further expenditure of time and labor on the claim. It is my further judgment on the evidence that as a fact Overgaard formally abandoned and intended to abandon his claims to the property in January, 1906, and had no possession when defendants entered, and was not ousted by such entry.

Findings of fact and conclusions of law may be drawn in compliance herewith.