UNITED STATES v. STOCKTON MIDWAY OIL CO. et al.

(District Court, S. D. California, N. D. January 5, 1917.)

(No. A-54.)

1. MINES AND MINERALS ⊙⟶17(1)—LOCATION—EFFECT OF.

The mere location of claims does not establish a valid mineral claim, discovery of minerals being the prerequisite, although the locators before discovery are entitled, as against all persons save the government, at least, unhindered to engage diligently in the prosecution of work leading to the discovery of minerals.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 24, 27, 28.]

2. MINES AND MINERALS ⊙⟶9—WITHDRAWAL OF LANDS—MINERAL LOCATIONS.

Under Pickett Act June 25, 1910, c. 421, 36 Stat. 847 (Comp. St. 1913, §§ 4523–4525), declaring that in event of withdrawal of public lands from appropriation, those engaged at the date of withdrawal in the diligent prosecution of work leading to the discovery of oil or gas under mining locations shall be protected, such a locator, even as against the government, is entitled to pursue his work of discovery uninterrupted.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 9–13.]

3. MINES AND MINERALS ⊙⟶36—DISCOVERY—EFFECT OF.

A locator's discovery of oil on one claim cannot perfect his location on an adjoining claim, as to which there was no discovery, though raising a natural inference that oil could be discovered on such claim.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 87.]

4. MINES AND MINERALS ⊙⟶23(2)—ASSESSMENT WORK—GROUP THEORY.

Under Rev. St. § 2324 (Comp. St. 1913, § 4620), declaring that on each claim, until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year, annual assessment work under the group theory, if otherwise sufficient in amount, done upon one of a group of contiguous claims and calculated to aid in the development of the mineral resources of the entire group, is sufficient to hold and protect all of the claims constituting the group.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 54.]

5. MINES AND MINERALS ⊙⟶9—LOCATION—DISCOVERY—GROUP THEORY.

The Pickett Act, relating to withdrawal of public lands from appropriation, declares that such withdrawal shall not affect the rights of locators in diligent prosecution of work leading to the discovery of oil. Rev. St. § 2324, declares that until issuance of patent not less than $100 worth of labor shall be performed or improvements made during each year, while section 2325 (Comp. St. 1913, § 4622) declares that a patent for any land claimed and located for valuable deposits may be obtained only in case $500 worth of labor upon the claim has been performed. A contract for the exploration of contiguous locations, to discover whether the group contained oil, required explorations to be made on only one claim, and, in event of the discovery of oil, provided that they should be continued on the other claims. Before oil was discovered the lands

---

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

were withdrawn from appropriation, though exploration work at that time was proceeding on one of the claims. The work resulted in the discovery of oil, and defendant, the value of the exploration work on one claim exceeding the amount which would have been required to hold all the claims, contended that it was entitled to all of the claims, notwithstanding withdrawal under the group development theory; the work on one of the claims being for the development of all. *Held* that, as the group development theory is applied only to development work after discovery and as defendant, if unsuccessful as to the claim explored, would have abandoned the others, such theory is inapplicable.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 9–13.]

In Equity. Suit by the United States against the Stockton Midway Oil Company and others. On application for injunction and for receiver. Injunction granted, and receiver appointed.

E. J. Justice, Sp. Asst. Atty. Gen., Frank Hall and A. E. Campbell, both of San Francisco, Cal., and Albert Schoonover, U. S. Atty., of Los Angeles, Cal., for the United States.

A. L. Weil, of San Francisco, Cal., and C. W. Miller, of Stockton, Cal., for defendants.

BLEDSOE, District Judge. This is an application by the plaintiff for an injunction in restraint of waste and for the appointment of a receiver for oil property claimed by the government in its proprietary capacity, and now in the possession of and being operated for the production of oil by defendants. The case is a so-called "withdrawal suit" and in its substantial features is of the form, scope, and purpose of cases heretofore considered and reported. United States v. McCutchen et al. (D. C.) 234 Fed. 702, same case on final hearing 238 Fed. 575; also United States v. Midway Northern Oil Co. (D. C.) 232 Fed. 619, heretofore heard and determined by Judge Bean sitting in this court.

The facts of the case present no conflict. Substantially they are as follows: The land in dispute is the southeast quarter of section 14, township 31 south, range 22 east, Mt. Diablo meridian, in the state of California. All of the four quarters of the section named were located as four placer claims at the same time and by the same persons, and of course are contiguous. Each quarter section later passed into the possession of the Bear Creek Oil & Mining Company, under which the General Petroleum Company now claims, for development purposes; previously to production of oil upon the land, it was what is known as "wild-cat" territory, in that it was not known to contain oil, and was not near enough to a known oil territory to make the existence of oil therein reasonably probable, although its relation to other oil lands, and its geological characteristics were such as to suggest the possibility that it contained oil. The Bear Creek Oil Company concluded to explore the land for oil, and in pursuance of that purpose entered into a contract with the original locators which contained the following among other stipulations:

"In consideration of said covenants on the part of the party of the first part, the party of the second part hereby agrees that it will, within 20 days after the date hereof, commence the erection on each three quarters in said section of buildings sufficient and suitable to carry on the business of drilling

for oil, and an oil drillng derrick. On the remaining quarter, to complete a standard drilling rig and as soon as practical·thereafter to commence the actual work of drilling the well and continue the same with reasonable diligence *until success or abandonment, that is to say, until the territory shall have been tested for petroleum oil.* (Italics supplied.) After the completion of a well on the first quarter producing oil in paying quantities, the said party of the second part agrees to commence a well on one of the remaining quarter sections, and after oil shall have been discovered on the second quarter in paying quantities, work will be commenced and prosecuted in a similar manner on each of the third and fourth quarters successively."

Pursuant to this contract the Bear Creek Oil & Mining Company established a camp at the center of the section and erected a building or buildings on each of the four quarter sections, which were thereafter continuously occupied by its employés. A water line was run, a water tank was established on one of the quarters, a road was made, and a skeleton derrick was erected on each quarter. These improvements were made in the spring of 1909, and completed some·time in June of that year. Work on the drilling of a well on the southwest quarter and near the center of the section was begun in June, 1909, and continued until oil was discovered in the fall of 1909, and the well completed in February, 1910. The skeleton derrick on the southeast quarter, involved in this suit, was destroyed by wind in the fall of 1909, and another derrick was erected thereon during the winter following.

After the completion of the well on the southwest quarter, wells were drilled consecutively on the northwest, northeast, and southeast quarters, the one on the southeast, the last to be drilled, having been spudded in in May, 1910, and later oil was discovered on that tract. On December 15, 1909, an affidavit as to the work 'theretofore done on the southeast quarter was filed, which said affidavit purported to recite the doing of so-called assessment work upon the claims during the year 1909 in a sum considerably in excess of the statutory requirements. Said affidavit also recited that such expenditures were made for the purpose of holding said claim, and also recited that, in addition to the labor done on said claim, the Bear creek Oil & Mining Company was the owner of the four claims heretofore referred to, covering the four quarters of the section above mentioned; that they lay in a contiguous compact group, and that the labor done and improvements placed upon any one of said claims tended to and did develop and determine the oil-bearing character of said contiguous claims and of each of them; also that upon said group of claims the owner had performed labor and made improvements of the value of not less than $20,000, etc.

[1] The lands in question were withdrawn from appropriation under the mineral land laws of the United States by the executive withdrawal of September 27, 1909. See U. S. v. Midwest Oil Co., 236 U. S. 459, 35 Sup. Ct. 309, 59 L. Ed. 673. Up to the time the lands in controversy were withdrawn from appropriation, no "discovery" of any mineral had been made. The claim had been "located"—that is, appropriate monuments and a mineral location notice had been set up—but the sine qua non of a valid mineral claim, viz., the discovery of mineral within the limits of the claim, had not been accomplished. The locators, then, were in the position referred to and commented upon in McLemore v. Express Oil Co., 158 Cal. 559, 112 Pac. 59, 139 Am. St. Rep. 147.

They had acquired no permanent vested rights of any character, and in virtue of their location and occupancy of the claim had acquired merely the limited right, as against all persons save the government, at least (McLemore v. Express Oil Co., supra) unhindered, to engage diligently in the prosecution of work leading to a discovery of oil or other mineral content within the boundaries of the claim located.

[2] As I was led to conclude in the McCutchen Case, on application for a receiver, supra, the withdrawal order itself, by its terms, recognized and sought to protect this substantial, though limited, right. Express congressional recognition of it was accorded in the Pickett Act (36 Stat. 847), which, while neither acknowledging nor repudiating the validity of the withdrawal order, limited the extent to which such order might otherwise go, if valid, by protecting from withdrawal those who were at the date of withdrawal "in diligent prosecution of work leading to discovery of oil or gas." In other words, by this act Congress sought to give oil locators before discovery the same rights as against the government that judicial decisions had given them as against third persons. There is no inference to be drawn, however, that Congress, legislating, as it then was as to withdrawals and in aid ,of the proprietary rights of the government, was intending to confer any additional rights, particularly as against the government, upon those claiming, without a discovery, land withdrawn by competent authority. The net result of the situation, then, was that, upon the withdrawal of the land embraced within his claim, in the absence of a discovery, a claimant possessed no rights at all, as against the government, save the right, if he were then actually engaged in the diligent prosecution of work leading to a discovery of oil or gas on such claim, to "continue in diligent prosecution" of such work until a discovery, as a result of such continued diligent prosecution, had been effected. By that event, of course, and not till then, his immunity as against attack by the government in its proprietary capacity would be complete. Previously to such event, and in the absence of the required diligent prosecution of work, he has no defense to the government's claims.

[3] Confessedly, at the date of the executive withdrawal order in 1909, no work of any kind, diligent or otherwise, leading to a discovery of oil in the southeast quarter of section 14, was in progress. Diligent work, pursuant to the contract herein above referred to, was in progress on the southwest quarter; but the most that work could "lead" to, as in fact all it did "lead" to, was a discovery with respect to the claim on such southwest quarter. A discovery of oil on the southwest quarter, no matter how persuasive as to the presence of oil in, could not validate the location on, the southeast quarter. Nevada Sierra Oil Co. v. Home Oil Co. (C. C.) 98 Fed. 673; Olive Land & Development Co. v. Olmstead (C. C.) 103 Fed. 568. Defendants concede this, but claim (and this is the only question in the case) that the diligent prosecution of work at the time of withdrawal on the southwest quarter, under the so-called "group development" rule, sufficed to protect, until actual discovery, the other three claims in the group.

[4] This "group development" theory .is based upon a situation well known and recognized in the mining world, to the effect that annual assessment work, if otherwise sufficient in amount, done upon one of a group of contiguous claims and calculated to aid in the development of the mineral resources of the entire group, will be accepted by the government and will suffice to hold and protect all the claims constituting the group.    Section 2324, .Rev. Stat. (Comp. St. 1913, p. 4620) ;  Anvil Hydraulic Co. v. Code, 182 Fed. 205, 105 C. C. A. 45, where a very satisfactory statement of the rule may be found.    But the inherent and fundamental weakness of defendant's contention in this regard is .that the rule of "group development," both in the statute and in the decisions, relates only to subsisting mineral claims—i. e., claims upon or within which ₐa discovery has been made.    No case to which my attention has been called, and no statute or regulation of which I have knowledge, makes the group development rule applicable to any claims other than those upon which annual assessment work is due, viz. claims founded upon a discovery.    Prior to discovery, "assessment work" will not suffice to hold a claim, nor will it suffice to take the place of a discovery.    In its legal effect, it is "irrelevant and immaterial."    McLemore v. Express Oil Co., supra. Nor is the Pickett Act, expressly or impliedly, a recognition of the "group development theory," as suggested by counsel for defendant. As above indicated, that act was passed because of, and with reference to, a controversy over the status of claims where a discovery had not been made;  it had no concern with, and is not affected by, any regulation or statute respecting the continued holding of claims already valid in law because a discovery therein had been made.

Counsel's argument is based upon the fact that the language of the Pickett Act does not in express terms demand that the "diligent prosecution of work" shall be performed upon the claim in question, and that in consequence, and in light of the practice and decisions respecting the doing of annual assessment work upon claims held in groups, such practice and decisions are "to be read into" the Pickett Act, and "diligent prosecution of work" adjudged accordingly.    The dissimilarity of the situations, however, makes inapposite the suggestion of reading the one law into the other.    The one had to do with the holding of a claim valid in law;  the other had to do with the initiating of such a claim.    In addition, though it may not be so phrased in express terms, the clear inference to be drawn from the Pickett Act is that Congress intended that the work therein provided for should be done upon the precise land which might be the subject of a withdrawal order.    Nothing in the act serves to indicate any other intention;  the language of the decisions furnishing the inspiration as well as the wording of the act (Miller v. Chrisman, 140 Cal. 440, 73 Pac. 1083, 74 Pac. 444, 98 Am. St. Rep. 63;  McLemore v. Express Oil Co., 158 Cal. 559, 112 Pac. 59, 139 Am. St. Rep. 147 ;  Borgwardt v. McKittrick Oil Co., 164 Cal. 650, 130 Pac. 417) lends countenance to no such suggestion as is advanced herein;  and, finally, the language of the act itself is inconsistent with such a conclusion.    It provides that, if a bona fide occupant or claimant is in "diligent prosecu-

tion of work leading to discovery of oil or gas," he shall not be affected by the withdrawal order. Obviously, the work which will avoid withdrawal must be work which, if persisted in, will "lead" to—i. e., bring about—a discovery of mineral upon the precise land withdrawn. No other land was in contemplation; on no other land could a discovery be made which would be productive of any mineral rights in or to the land withdrawn.

The argument is also advanced that, though section 2325, Revised Statutes (Comp. St. 1913, § 4622), permits the issuance of a patent as for mineral land only in case $500 worth of labor "upon the claim" has been performed, yet nevertheless the Land Department has consistently applied the "group development" rule to applications for patent, and has in consequence directed issuance of patents where the work was not done "upon the claim," but only upon one of a group of claims. Copper Glance Lode, 29 Land Dec. 542; Zephyr and Other Lode Claims, 30 Land Dec. 510. With this premise, the conclusion is urged that the ruling of the court in its consideration of the Pickett Act should be along similar lines. Aside from the obvious fact that a different rule of construction might reasonably be followed as between section 2325, in which the government is asserting and seeking to enforce no proprietary right, and the Pickett Act, in which such a right is asserted and dealt with, it would seem to suffice to suggest that under section 2324 of the Revised Statute (Comp. St. 1913, § 4620), where the group development rule received its first recognition, by the doing of assessment work pursuant to such rule, the one substantial right in connection with mineral land, viz. the right to hold and work the claims, even as against the government, was secured. Such being the case, it was perhaps not improper, and in furtherance of the liberal construction of mining laws in aid of mineral development, that the department should consider that a vested right, even as against the government, having been thus acquired, a patent, which is merely evidentiary of that right, should follow, even though express authorization of such patent, based upon group development work, was lacking in section 2325. It might be that the department was too liberal in its construction of section 2325. However, nothing in aid of a proper construction of the Pickett Act, where the rules are to be applied with strictness in favor of the government, is to be gleaned, in my judgment, from the department's construction of section 2325.

The decision of Judge Riner, of the District Court of Wyoming, in United States v. Ohio Oil Company, 240 Fed. 996, is cited in support of defendant's contention. True it is, in that case, that Judge Riner, apparently without giving consideration to the precise point involved herein, did hold that work done apparently on one or more claims for the benefit of several would redound to the benefit of the claimant and suffice, as against the provisions of the Pickett Act, to vest him with a valid title to the land as mineral land with respect to all of the claims. Preliminarily, it should be observed that with respect to the claims in question Judge Riner had found that a sufficient "discovery" in law had been made; for the holding of the claims thereafter, of course, the "group development" rule adverted

to by Judge Riner was applicable and proper. Moreover, it is apparent from the facts in that case that the contract entered into previously to the withdrawal order provided for the drilling of wells "on these lands." It would seem, therefore, as if in that case there was a positive agreement to prosecute work by the drilling of wells upon each one of the claims in question. Such might properly have been held by Judge Riner to have been the diligent prosecution of work with respect to all of the claims at the time of the withdrawal order. In the case at bar, however, it is apparent from the terms of the contract entered into that in the event of the failure to discover oil on one of the claims, no wells would have been drilled upon the others; in consequence there was no positive obligation to do anything on the southeast quarter at the time the withdrawal order was promulgated. As a necessary result thereof, there was no diligent prosecution of work at that time with respect to such southeast quarter. Irrespective of what the conclusion may have been in the Ohio Oil Case, then, the case at bar is clearly differentiated from that case, and not within either the spirit or scope of its ruling.

In addition, it may be said that, to hold that one may acquire rights as against the government, in the face of a withdrawal order, merely by following the "group development" rule, prosecuting his work upon several claims in succession, but always one at a time, is to go counter to the holding in Borgwardt v. McKittrick Oil Co., supra. There it was sought to engraft upon the rule requiring diligent prosecution of work leading to a discovery, the qualification that it might be engaged in within a "reasonable time" after location. This qualification was expressly repudiated by the court, it being said (164 Cal. 661, 130 Pac. 421):

"The rule declared by the decisions does not so provide. The attempting locator's possession is protected only while he may fairly be held to be actually engaged in such work as may reasonably be held to be discovery work."

So here, if actually engaging in the diligent prosecution of work leading to discovery is essential, the putting off of that work with respect to one claim, while another claim was being explored for purposes of discovery, would seem to be destructive of the right of the claimant to be protected in his claims upon which no work was actually being done. The lands in controversy having been withdrawn before discovery, and no diligent work leading to such discovery having been in progress at the date of withdrawal, it follows that defendants show no such right to the lands as to negative the probability of the government's success on final hearing.

The motion for injunction and receiver, applied for, will therefore be granted. Counsel will draft appropriate decrees.